645 So.2d 1223 (1994)
Allen Ray PUTNAM,
v.
Karen R. Putnam MAYEAUX, Trey Mayeaux and James Mayeaux.
No. 93 CA 1251.
Court of Appeal of Louisiana, First Circuit.
November 10, 1994.
*1224 Bryan E. Bush, Jr., Baton Rouge, for plaintiff-appellee Allen Ray Putnam.
Jerry L. Hermann, Houma, for defendant-appellant James E. Mayeaux, Jr.
Before LOTTINGER, C.J., and CARTER and PITCHER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in favor of Allen Ray Putnam, ordering that Allen Ray Putnam, Karen Rene Putnam Mayeaux, and Trey Mayeaux submit themselves for blood tests to determine the paternity of Trey Mayeaux.

FACTS
On December 21, 1990, James E. Mayeaux, Jr. and Karen Rene Putnam Mayeaux were married.[1] On April 26, 1991, a child, James E. "Trey" Mayeaux, III, was born. The child's birth certificate lists James E. Mayeaux, Jr. as the father.
On April 29, 1992, Allen Ray Putnam filed a petition to establish the paternity of Trey Mayeaux, alleging that he was formerly married to and divorced from Karen Mayeaux and that he maintained a sexual relationship with her at "times corresponding to the birth" of Trey Mayeaux. In the petition, Putnam requested that the court order that blood tests be conducted to determine whether he is the father of the child.
On June 9, 1992, James E. Mayeaux, Jr., filed an exception pleading the objections of no right and/or no cause of action and prescription. Mayeaux contended that, because he was married to Karen Mayeaux at the time of Trey's birth, he is presumed to be the father of the child. Mayeaux further claimed that, because no disavowal action had been filed within the legal time limit, he is conclusively the father of Trey.
On September 16, 1992, a hearing was held on the exceptions and to determine the issue of whether Karen Mayeaux and Trey Mayeaux would be required to submit to blood tests. After hearing the testimony and argument of counsel, the trial judge took the matter under advisement. On November 3, 1992, the trial judge rendered judgment, overruling the exceptions and ordering that Putnam, Karen Mayeaux, and Trey Mayeaux submit themselves for blood tests to determine the paternity of Trey Mayeaux. The judgment was subsequently signed on January 4, 1993.
*1225 Mayeaux appealed from the trial court judgment, assigning the following specifications of error:
1. The trial court erred in ordering Trey Mayeaux to submit to blood testing for purposes of determining Putnam's biological relation, if any.
2. The trial court erred in overruling the exception pleading the objection of prescription.

BLOOD TESTING
Mayeaux contends that the trial court erred in ordering that blood tests be conducted because Putnam's avowal action, which was filed one year and three days following the child's birth, was untimely.
Blood tests for the determination of paternity are addressed in LSA-R.S. 9:396, et seq. LSA-R.S. 9:396A provides, in pertinent part, as follows:
Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood or tissue is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the collection of blood or tissue samples, or both....
In Smith v. Jones, 566 So.2d 408 (La.App. 1st Cir.), writ denied, 569 So.2d 981 (La. 1990), this court addressed the issue of the applicability of the blood testing statute in a situation where an unmarried man claims to be the biological father of a married woman's child. Citing Smith v. Cole, 553 So.2d 847 (La.1989), the court indicated that biological fathers who meet certain prerequisites have a right of avowal despite the presumption in LSA-C.C. art. 184 that the husband of the mother is presumed to be the father of all children born or conceived during the marriage. In Smith v. Jones, 566 So.2d at 414, the court stated as follows:
While we recognize the right to avowal in the circumstances discussed herein, this right should not be absolute. The line of cases which have expanded the rights of illegimate [sic] fathers are quite consistent in holding that it is the actual relationship with the child that is determinative, not the mere biological connection where the biological father has chosen not to timely develop it. Thus a biological father who knows or has reason to know of the existence of his biological child and who fails to assert his rights for a significant period of time, cannot later come forward and assert paternity. While Mr. Smith has no actual relationship with his alleged child, he instituted this suit within three months of the child's birth, after the mother had denied his requests for visitation. As the second circuit recognized in Finnerty, "the biological relationship does entitle the natural father at least some opportunity to develop a personal relationship with his child and thus to assume a responsible role in the future of his child." 469 So.2d at 292.
The court then went on to state the following:
Where a biological father has an actual relationship with his child or where he has been prevented from forming an actual relationship by the mother and he institutes an avowal action within a reasonable time of the child's birth, he may utilize R.S. 9:396 in an avowal action.
Smith v. Jones, 566 So.2d at 414.
Putnam testified that, after the child's birth, he attempted to see the child. He acknowledged that he had not provided financial assistance for the child, but he indicated that he had tried to do so. Putnam also acknowledged that he filed this suit more than one year after the child's birth, but he explained that the reason he delayed filing the suit was because he was attempting to get Karen and the child to submit to blood tests. Putnam further explained that, after being unsuccessful in his attempts to get them to submit to blood testing, he filed this suit.
After reviewing the testimony, it is clear that Putnam has no relationship with his alleged biological child. However, Putnam filed the paternity action one year and three days following the birth of the child, which we believe to be "within a reasonable *1226 time of the child's birth," considering that, within that year, he attempted unsuccessfully to see the child, he offered to provide for the child, and he attempted to get Karen and the child to submit to blood tests. Therefore, Putnam's avowal action was timely.
Having determined that Putnam's avowal action was timely filed, we must consider whether Putnam adequately established his entitlement to the blood tests. In the Interest of J.M., 590 So.2d 565, 571 (La. 1991), addressed the issue of the requisites in a paternity suit to trigger court-ordered blood testing. The court concluded that, in order to trigger court-ordered blood testing, the moving party must first show that there is "a reasonable possibility of paternity." In the Interest of J.M., 590 So.2d at 571.
At the hearing in the instant case, Karen Mayeaux testified that she was once married to Putnam. Karen stated that at the time she married James Mayeaux, Jr., on December 21, 1990, she was pregnant. Karen indicated that, during their marriage, on April 26, 1991, she gave birth to a child, James Edward "Trey" Mayeaux, III.
A letter from Karen's obstetrician, Dr. D. Wade Hollensworth, was introduced and admitted into evidence without objection. In the letter, Dr. Hollensworth stated that "the most likely date of conception was within one week of August 19, 1990."
Further, Karen testified that she began having a sexual relationship with Putnam at the beginning of August of 1990 and that it continued through Labor Day of 1990. However, during this same period of time, Karen indicated that she was also involved in a sexual relationship with Mayeaux. According to Karen, she was certain of two things: (1) that during the week of August 12-19, 1990, she was having a sexual relationship only with Mayeaux; and (2) that she was sexually involved with Putnam during the Labor Day weekend of 1990. However, as to the days in between those two time periods (including the week following August 19, 1990), Karen could not recall whether she had had a sexual relationship with Putnam.
Putnam testified that he was married to Karen from February of 1984 through March of 1988 and that they had attempted to have children "once or twice" during the marriage, but were unsuccessful. According to Putnam, after he and Karen were divorced, they were involved in a sexual relationship on a regular basis beginning in early August of 1990 through Labor Day of 1990.
James Mayeaux, Jr., testified that Karen was pregnant when he married her and that he is listed on the child's birth certificate as the father. Mayeaux stated that he and Karen were engaged in a sexual relationship on a nightly basis from August 12, 1990, through the Friday before Labor Day of 1990. He testified that Karen told him that she had been sexually involved with Putnam during the Labor Day weekend of 1990. Mayeaux acknowledged that he had undergone blood tests to determine if he was the father of the child and stated that he had not been told that he is not the father. Mayeaux indicated that he has not lived with Karen since July of 1991, but that he has continued to have a close relationship with the child.
Barbara Mayeaux, James Mayeaux, and Renee Mayeaux testified that Karen told them that she had been with Putnam on one occasion only, Labor Day of 1990. However, these witnesses acknowledged that they had no way of knowing if there had been other occasions of sexual involvement between Karen and Putnam. The parties stipulated that, had Joey Lynn Mayeaux testified, she would have corroborated the testimony of Barbara Mayeaux, James Mayeaux, and Renee Mayeaux.
After reviewing the record in its entirety, we conclude that the trial court correctly determined that Putnam showed that he timely instituted his avowal action and that there is a reasonable possibility of paternity. Therefore, we find that the trial court did not err in ordering that Trey Mayeaux submit to blood testing for purposes of determining Putnam's biological relation.

PRESCRIPTION
Mayeaux also contends that the trial court erred in overruling the peremptory exception pleading the objection of prescription. However, there is no applicable prescriptive *1227 period for an avowal action. Therefore, we find that the trial court did not err in overruling the exception pleading the objection of prescription.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed against Mayeaux.
AFFIRMED.
NOTES
[1] Karen was previously married to plaintiff, Allen Ray Putnam.