666 So.2d 1192 (1995)
Donna S. GEEN, Plaintiff-Appellee,
v.
Kevin Charles GEEN, Defendant-Appellant.
No. 95-984.
Court of Appeal of Louisiana, Third Circuit.
December 27, 1995.
Writ Denied March 22, 1996.
*1193 Raymond J. LeJeune, Mamou, for Donna S. Geen.
Ellis J. Daigle, Eunice, for Kevin Charles Geen.
Before DOUCET, C.J., and YELVERTON, THIBODEAUX, WOODARD and KNIGHT[*], Judges.
WOODARD, Judge.
This case involves a custody dispute between the appellees, plaintiff Donna Geen Robertson and intervenor Kevin Robertson (Robertson), who are the biological parents of the minor child, Ryan Geen, and the defendant-appellant Kevin Geen (Geen), who is the former husband of Donna and the legal father of Ryan. Geen appeals the judgment of the trial court, which overruled his exception of prescription regarding the paternity action filed by Robertson, and which also recognized Robertson as the biological father, and which further granted Donna and Robertson the primary custodial care of Ryan.

FACTS
Donna was pregnant when she married Geen on December 19, 1990. She had been involved with Robertson before her marriage to Geen, last having sexual intercourse with him around October 23, 1990. Before marrying Geen, she informed Robertson of her pregnancy, but when Robertson would ask her who the baby's father was, Donna would either ignore his queries or would respond equivocally. Ryan was born on July 23, 1991, nine months after Donna and Robertson had last had sex.
Donna and Geen separated on November 27, 1992. A petition for divorce was filed on December 1, 1992. After a custody hearing on December 10, 1992, Geen and Donna were awarded joint legal custody of Ryan, with Geen being designated the domiciliary parent *1194 and Donna being granted liberal visitation privileges. This award was a considered decree.
Since his birth, Ryan has lived with Geen and has been in his primary custodial care, but recently, with Geen's blessing and encouragement, Ryan has also spent a substantial amount of time with Donna and Robertson.
Donna began living with Robertson shortly after the custody hearing, and following her divorce from Geen on June 29, 1993, they married on July 3, 1993. After two separate DNA blood tests, one in January 1993 and the other in October 1994, revealed a 99.76% probability that Robertson was the biological father of Ryan, Robertson filed a petition to establish paternity and for custody of Ryan. Donna also filed a motion for a change of custody on April 26, 1995, in which she asked that she be granted sole custody of Ryan, or if Robertson were found to be Ryan's biological father, that custody be awarded to her and Robertson jointly.
After a trial on the merits, the trial court ruled in a judgment issued May 11, 1995, that Geen was Ryan's legal father and that Robertson was his biological father. In that same judgment, the court awarded the primary custodial care of Ryan to Donna and Robertson, granting Geen liberal visitation privileges.
Geen now appeals this judgment.

ISSUES
The issues presented for review by Geen are: (1) whether Robertson asserted his right to establish his biological paternity to Ryan within a reasonable time after Ryan's birth; and, (2) whether the trial court properly changed domiciliary custody from Geen, Ryan's legal father and Donna's former husband, to Donna and Robertson, Ryan's biological parents, who are married at this time.
As to issue number one, we affirm; as to issue number two, we reverse.
We also note that the trial court, in apparently an oversight, did not explicitly state that it was awarding joint legal custody to all three parties. This is, however, implicit in its judgment and reasons for judgment. We will, therefore, so amend the judgment to reflect that the parties were awarded joint legal custody.

LAW AND DISCUSSION

PRESCRIPTION/PEREMPTION
Geen contends that Robertson knew, or had reason to know and believe, that Ryan was his biological child before or soon after Ryan was born. Therefore, his avowal action, filed nineteen months after Ryan's birth, was unreasonably tardy, and Robertson should not have been allowed to assert that action.
In Putnam v. Mayeaux, 93-1251 (La.App. 1 Cir. 11/10/94); 645 So.2d 1223, the biological father brought an avowal action one year and three days after the child's birth. The first circuit held that biological fathers who meet certain prerequisites have a right of avowal, despite the presumption in La.Civ.Code art. 184 that the husband of the mother is presumed to be the father of all children born or conceived during the marriage. Putnam, 645 So.2d 1223. This court agrees. The court in Putnam held that a right of avowal is not absolute. It is the actual relationship with the child that is determinative, not the mere biological connection. Id. Moreover, the presumed father's failure to disavow paternity does not preclude the biological father from bringing an avowal action. Smith v. Cole, 553 So.2d 847 (La.1989). However, a biological father who knows or has reason to know of the existence of his biological child, and who fails to assert his rights for a significant period of time, cannot later come forward and assert paternity. Putnam, 645 So.2d 1223.
Geen argues that Robertson failed to assert his rights for a significant period of time after his knowledge of the existence of Ryan. However, the trial court ruled that a time lapse of fifteen to nineteen months was not an unreasonable period of time. Robertson testified that he always suspected that Ryan was his biological child. He further testified that he questioned Donna about Ryan's paternity on several occasions, but it *1195 was not until after Donna and Geen separated that she directly answered his questions. At that point, Donna straightforwardly confessed to Robertson that he could be Ryan's biological father. Robertson consequently filed suit to establish his paternity within a month of obtaining the DNA blood test results.
We agree with the trial court that given Donna's persistent equivocations regarding Robertson having fathered Ryan, her refusal to have contact with Robertson for an extended period, Geen's assumption that he was Ryan's father, and Robertson's immediate filing of a paternity lawsuit following his receipt of the DNA blood test results, a significant period of time did not elapse so as to preclude Robertson's avowal action.
The trial court was not clearly wrong in finding that Robertson's actions were reasonable under the circumstances of this case. We do not find that the trial court erred in overruling Geen's exception of prescription. Thus, we affirm the trial judge on this issue.

CHANGE OF CUSTODY BURDEN OF PROOF
However, we reverse the trial court's ruling as to whom should be the primary custodial parent. We find that the court erred as a matter of law, and even if it had not, it erred in that it abused its discretion.
The trial court in this case erred in considering the question of child custody as if the matter had never been ruled on before, ignoring that there was in effect a prior considered decree between Geen and Donna, and in misapplying an abbreviated "best interest of the child" test.
When a trial court has made a considered decree of custody, the party seeking a change in custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child that a modification of the custody decree is justified, or of proving, by clear and convincing evidence, that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). The Bergeron rule is based on limiting repeated litigation and maintaining the continuation of a child's established living environment. A considered decree is one rendered after evidence as to parental fitness to exercise custody has been received by the court. State In Interest of C.G., 609 So.2d 1049 (La.App. 2 Cir.1992), writ denied, 612 So.2d 85 (La.1993).
The award of primary physical custody to Geen, instead of to Donna, after the custody hearing of December 10, 1992, was such a decree. Thus, for her to now have that award modified, she must prove that the Bergeron test is met. Robertson's position is different. He was not a party to the original custody dispute between Geen and Donna. Until now, he had never been a party to a custody action involving Ryan, presenting evidence regarding his fitness as a parent, which resulted in the issuance of a considered decree or even a consent decree. Accordingly, the heavy burden of proof enunciated in Bergeron is not applicable to him. His request for a modification is governed by the "best interest of the child" criteria set forth in La.Civ.Code arts. 131 and 134. Peyton v. Peyton, 614 So.2d 185 (La.App. 3 Cir.1993). Additionally, in cases where there has not been a previously considered custody decree, this court has stated that the trial court must find that there has been a material change in circumstances and that a change of custody would be in the best interest of the child. Chandler v. Grass, 600 So.2d 852 (La.App. 3 Cir.1992).
Thus, in the case before us, as Robertson was not a party to the original custody hearing, he should not be subjected to the heavy burden of Bergeron simply because he married Donna. By the same token, Donna, because she had previously been a party to a considered decree proceeding, cannot now avail herself of the lighter burden of Chandler simply because she married Robertson. Hence, Donna had to show that a change was warranted under Bergeron, and Robertson had to show that a change was likewise warranted under Chandler.
Reviewing the record in light of the respective tests to be met, we find that neither has met his or her burden. Moreover, even if we would approve of the use of the Chandler test as to Donna and Robertson because *1196 they are now a married couple, it is also abundantly clear from the record that the trial court manifestly erred in finding that it would be in the best interest of the child to change domiciliary custody from Geen to the Robertsons.

DONNA VERSUS GEEN
No one has ever argued, much less seriously argued, that a change in custody would be justified under Bergeron. Not one bit of evidence has been presented to show that the present domiciliary custody under Geen is deleterious at all, much less so deleterious as to justify a modification of the custody decree. In fact, Geen deserves nothing short of exemplary marks for his consistent, quality care of Ryan. Nor has it been shown that the harm likely to be caused by a change would be substantially outweighed by the advantages of such a change for the child, much less showing this by clear and convincing evidence, as Bergeron requires. Everything introduced into the record shows that Geen is a model parent. He has been the one constant, stable factor in this child's lifethe primary caretaker from the moment of birth, and in whose care Ryan has flourished.
Thus, a change in custody is not warranted under Bergeron.

ROBERTSON VERSUS GEEN
Even assuming that the success of Robertson's avowal action, or the marriage of Robertson and Donna, is the sort of material change that is contemplated by Chandler, Robertson, although also a worthy parent, has clearly not had the relationship, whether in terms of quality or duration, for whatever reasons, that Geen has had. This is an acknowledged fact that cannot be contradicted from the record. The long parental history shared by Ryan and Geen, and the consequent parent-child bond that developed cannot be said to have been shown to exist to the same extent between Ryan and Robertson. Moreover, when a matchup is made between the two fathers, in light of La.Civ. Code art. 134, Geen is favored. Simply stated, Geen has been faithfully fulfilling the role of father for a much longer time, and the importance of being the primary caretaker and a constant in the child's life since birth should not be minimized when evaluating the best interests of the child. A change such as that demanded by the Robertsons would be taking unknown risks inherent in going from a status quo that has been shown to be the optimum for the child to a situation that would be questionable as an improvement, if not entirely theoretical and speculative, as discussed with more particularity below.
Therefore, a change of custody from Geen to Robertson is not justified under the Chandler standard.

THE ROBERTSONS VERSUS GEEN
Assuming, arguendo, that Donna's marriage to Robertson somehow entitles her to seek, along with Robertson, a change in domiciliary custody under the Chandler rather than Bergeron test, which seems to have been the trial court's tacit assumption, we would nevertheless reverse, finding that the trial court had clearly abused its discretion. Again, we must first assume that a material change in circumstances has occurred, although the Robertsons have directed us to no law on point, jurisprudential, statutory, or otherwise, that supports their claim that their marriage or Robertson's successful avowal action constitutes the requisite material change.
The trial judge failed to fully consider many of the factors in La.Civ.Code art. 134 that were clearly applicable to the situation before him, especially those factors favorable to Geen. Instead, he nodded in passing to one or two, and emphasized only what seemed to favor the Robertsons. After concluding that all three of the parties were "good, acceptable parents who want what is right for little Ryan," he predominantly based his decision on the view that when redetermining what is in the best interest of the child, if the biological parents marry, this will automatically trump a model legal parent, even one who always has been the primary custodian and who has always been held in esteem for his fathering. Under the trial court's ruling, although Geen is clearly the favored parent under article 134, vis-a-vis either Donna or Robertson separately, because Donna and Robertson have married, Geen's status is transformed, as if by sleight *1197 of hand, into an inferior one. In this view, by their marriage, a form of synergy has taken place: the whole (the marriage) has become greater than the parts, Donna and Robertson individually, and the sum of those parts. This in actuality may or may not be, depending on the individual case, but the presumption that it has to be is a stereotype that is more fanciful than real, and inveterately deferring to such a bias could work cruel injustices to a child.
That the Robertsons' marriage is stable at this time is accepted as a given for the purposes of this opinion. That it will remain so is rank speculation. This is Donna's third marriage before the age of thirty. She married one man while pregnant with another's child, then left her husband for the father of that child. Who is to say that the tumultuous relationship the Robertsons had the first time will not regenerate itself. Surely, if one wishes to indulge in speculation, there is as much fodder to speculate negatively as positively when it comes to the stability of the Robertsons' present relationship. If the Robertsons' relationship broke up yet another time, how would that affect Ryan if he were in their custody?
The situation as to Geen is admittedly also speculative, as all things of this nature ultimately are, but not to the same degree as to the Robertsons, if the past is any gauge. The relationship between the parties, and among each of the parties and the child, is as good as it can be under the circumstances. And even though we agree that all three parents are concerned and caring, much of the credit for this goes to Geen. Considering the criteria set forth in article 134 of the Civil Code, Geen "scores" at least as well as Donna and Robertson, either individually or together, in every category, and he arguably "bests" them in a number of them. Geen has provided Ryan with a stable, wholesome environment, a permanent custodial home, and a close and continuing, loving relationship since Ryan's birth, always putting Ryan's interest above his own. He has fed him, dressed him, bathed him, provided medical care, and selected a school, after thoroughly investigating that school. From the very beginning, he has encouraged and facilitated a close and continuing relationship between Ryan and his other two parents. This cannot be said of the other parties to this action.
In sum, there is no real reason to change what is unquestionably working so well for the child. We, therefore, reverse the trial court on the issue of domiciliary custody.

CONCLUSION
For the reasons stated in the foregoing opinion, we affirm in part, amend in part, and reverse in part: we affirm the trial court's denial of the defendant-appellant Geen's exception of prescription as to the timeliness of the plaintiff-appellee Robertson's avowal action; we amend to award the defendant-appellant and the plaintiffs-appellees' joint legal custody of the child Ryan; and we reverse the trial court and award the defendant-appellant Geen domiciliary custody of the child Ryan, and grant visitation privileges to the plaintiff-appellee, Donna Geen Robertson, and intervenor-appellee, Kevin Robertson.
The defendant-appellant is assessed one-half, and the appellees the other one-half, of the costs of appeal.
AFFIRMED IN PART, AS AMENDED, AND REVERSED IN PART.
DOUCET, C.J., concurs in part and dissents in part and assigns reasons.
THIBODEAUX, J., concurs in part and dissents in part and assigns reasons.
THIBODEAUX, Judge, concurring in part and dissenting in part.
I concur with the majority's opinion that Robertson asserted his rights to Ryan's paternity within a reasonable time. I dissent, however, from its treatment from the change of custody issue.
The application of two different standards of proof is unworkable and impractical. Given the facts of this case, Donna and Kevin Robertson must be regarded as one unit and Kevin Geen as another adversarial unit. For instance, how would the trial court or this court fashion a custody decree if the conclusion was that Donna failed to satisfy a change was warranted under Bergeron, but *1198 Robertson reasonably demonstrated a change was warranted under Chandler v. Grass, 600 So.2d 852 (La.App. 3 Cir.1992)? Would there be a change of custody to Robertson, but not as to Donna, even though these two individuals were living together as spouses? How would the court effectively deny custody to Donna? Would it award reasonable visitation with Ryan, although Ryan was living in her household? Would it restrict visitation? Would custody be joint vis-a-vis Robertson and Geen, but not joint with regard to Donna? It would be impractical, if not impossible, to fashion a decree which would be rational and workable.
The modification of a previously imposed custody arrangement where there has not been a considered decree as to all parties should be decided, not by the Bergeron standard, but by the "best interest" standard. That is, the court must find a material change in circumstances and that a change of custody is in the best interest of the child. Chandler, 600 So.2d 852.
Donna and Robertson have proved the existence of a material change of circumstances since the first custody decree. Robertson proved that he, and not Geen, is Ryan's biological father. Additionally, Donna and Robertson have married; thus, there is a two-parent household as opposed to a single-parent household.
The majority observes incorrectly the trial court failed to follow many of the factors set out in La.Civ.Code art. 134 to determine what custody arrangement would be in Ryan's best interest. The introductory paragraph of La.Civ.Code art. 134(1-12) states:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include ... (Emphasis added).
The Article lists twelve factors that may be considered by the trial court in determining the best interest of the child. Comment (a) and the permissive language of the first paragraph of the Article informs this court that the list of factors formerly found in La.Civ.Code art. 131(C)(2) (1992) is preserved but the list's import was changed under the revision. Under the revision, the factors are suggestive guideposts which a court may utilize in making fundamental findings as to what disposition is in the child's best interest. Comment (b) of Article 134 further explains that the list is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. This presents a change in prior law which required the court to reach its decision only "after consideration of evidence with respect to all" the factors listed in the article. La.Civ.Code art. 131(C)(2) (1992). The list's illustrative nature gives the trial court the freedom to consider any additional factors. See Turner v. Turner, 455 So.2d 1374 (La.1984) where the trial court considered the fact that the parents were unable to get along with each other.
In Bynog v. Bynog, 663 So.2d 86 (La.App. 3 Cir.1995), this court stated that the Article 134 factors and all relevant factors are to be considered as a whole and that no one factor is to be considered to the exclusion of others. The best interest standard calls for the application of different factors and allows a trial court to determine the appropriate relative weight of the factors, depending on what purpose or policies it is serving; if it is a question of custody after divorce, it will be different from child custody modification, which in turn will be different from its application from termination of parental authority. See In re J.M.P., 528 So.2d 1002 (La.1988), (an adoption case noting that the best interest of the child standard will apply differently in each of the noted situations).
The trial judge stated in his oral reasons for judgment that he considered the best interest of the child in making his decision. With the exception of biological relationship and two-parent versus single-parent household, the trial judge did not specifically articulate the factors he used in reaching his decision nor did he recite the relative weight assigned to each factor he used. However, La.Civ.Code art. 134 does not require that the trial judge articulate each factor and assign a relative weight to each factor. The trial judge's oral reasons for judgment reflect that he agonized and grieved over "the unusual and bizarre circumstances of this case," *1199 but was always cognizant of the ultimate standard to be applied.[1]
An examination of the record discloses that the Article 134 factors were implicitly considered. The trial judge found "nothing wrong with any of the three parents" and believed that "either the single parent, Kevin Geen, or the biological parents, Donna and Kevin Robertson, can raise the child, Ryan. The Court believes and makes a finding of fact that all three of these folks love him tenderly." Nonetheless, these factors are not solely limited to those which are specifically enumerated in the Code. In this case, the trial judge decided to use the additional factors of the two-parent versus one-parent home and the biological relationship to Ryan. It is obvious that the trial judge placed great weight on those factors which is entirely within his discretion. In Creed v. Creed, 94-268 (La. App. 3 Cir. 12/21/94); 647 So.2d 1362, we recognized the paramount importance and uniqueness of the natural parent relationship. That relationship exists between Donna and Kevin Robertson and Ryan and was given appropriate and proper weight by the trial judge.
For the foregoing reasons, I respectfully dissent in part.
DOUCET, Chief Judge, concurring in part and dissenting in part.
I concur with the majority's determination that Robertson asserted his rights to the paternity of Ryan within a reasonable time. However, I would affirm the district court's ruling in all respects.
NOTES
[*] Judge William N. Knight of the Thirty-first Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] For instance, he noted:

"But, what the Court is interested and vitally so is what is best for this little boy."
"But, Gentlemen, the Court cannot mandate a menage à trois over here. No matter what the Court does in this case, it's [sic] conclusion will not be an ideal one. It cannot question ... what is best for Kevin Geen or for Kevin and Donna Robertson. It is a question of what is best for this little boy named Ryan."