[ iTRAYLOR, Justice.*
This avowal action arose when P.W., the biological father of the minor child, C.M., intervened in the legal parents’ custody proceeding to have his parental rights acknowledged. The trial court recognized P.W. as the biological father and ordered that a hearing be conducted to resolve visitation and child support issues in the best interest of the child. On appeal, the court of appeal barred the action under the doctrine of lach-es, reasoning that P.W.’s delay in filing for more than six years after the birth of the child prejudiced the child. The court of appeal reversed the judgment of the trial court and dismissed the petition in intervention. We granted certiorari to determine whether P.W.’s avowal action is barred under the doctrine of laches.
FACTS AND PROCEDURAL HISTORY
The child’s mother, T.D., and legal father, M.M.M., were married in October of 1984. In October of 1985, T.D. met P.W., who was also married at the time. T.D. and P.W. began having adulterous sexual relations in March or April of 1986. The affair spanned a period of approximately seven and one-half years. In March of 1988, T.D. conceived a child, C.M. T.D. informed P.W. that she suspected he was the father because she had not been intimate with her husband at the time of conception. T.D. also informed her husband that he was the father of the child.
T.D. and P.W. discontinued their sexual relations during the pregnancy, but contin *875 ued with the affair shortly after the child’s birth in December of 1988. P.W. testified that he regularly visited the mother and child throughout the affair and always suspected that he was the child’s father. In November of 1992, T.D. and M.M.M. separated. At T.D.’s request, P.W.Rcurbed his visits during most of the separation, but resumed them in March of 1993. In April of 1993, the child and P.W. underwent DNA paternity testing. In June of 1993, the DNA test results confirmed to a 99.5% probability that P.W. was the child’s biological father. That same month, T.D. and M.M.M. were granted a divorce. In August of 1993, the trial court named T.D. as the domiciliary parent and granted M.M.M. visitation. T.D. ended the affair with P.W. in November 1993 and, thereafter, would not allow P.W. access to the child.
In December 1994, P.W. intervened in the legal parents’ domestic proceedings seeking recognition of his biological paternity, joint custody, and visitation. The legal parents objected to this intervention. The court held that P.W.’s suit was not untimely because “his suspicions of parenthood were not confirmed until he received the results of the [DNA test]” and that visitation rights of any parent must be considered in light of the best interests of the child. The court recognized P.W. as the child’s biological father, ordered a mental health evaluation of the child to assess possible effects of parentage information and visitation with the biological father, and, finding itself without sufficient evidence to determine the best interest of the child, the court ordered an evidentiary hearing to determine visitation rights and to assess income for potential child support issues.
The legal parents appealed from this ruling, arguing the biological father’s action was untimely. The court of appeal found for the legal parents, reversed the trial court, and dismissed P.W. from the proceedings. P.W. sought writs with this court, contending the court of appeal misinterpreted and misapplied the doctrine of laches and, therefore, erred in dismissing his avowal action. P.W. additionally argues the court of appeal erred in failing to defer to the trial court’s factual findings. We granted certiorari to determine whether P.W.’s avowal action is barred under the doctrine of laches.
LAW AND DISCUSSION
In order for this court to decide the timeliness of the instant action, we must first set out the jurisprudential background of avowal. Louisiana courts have traditionally recognized a biological father’s right to his illegitimate child[1] by means of an avowal action. La. Civ.Code |3arts. 131, 134, 184; Peyton v. Peyton, 92-107 (La.App. 3 Cir. 2/3/93); 614 So.2d 185; Geen v. Geen, 95-984 (La.App. 3 Cir. 12/27/95); 666 So.2d 1192, 1195, unit den. 96-0201 (La.3/22/96); 669 So.2d 1224; Putnam v. Mayeaux, 93-1251 (La.App. 1 Cir. 11/10/94); 645 So.2d 1223; Chandler v. Grass, 600 So.2d 852 (La.App. 3 Cir.1992). This action is available despite the La. Civ.Code art. 184 presumption that the husband of the mother is the father of all children born or conceived during the marriage.[2] Durr v. Blue, 454 So.2d 315 (La.App. 3 Cir.), writ den., 461 So.2d 304 (La.1984); Smith v. Cole, 553 So.2d 847, 851 (La.1989); Finnerty v. Boyett, 469 So.2d 287, 292 (La. App. 2 Cir.1985); Warren v. Richard, 296 So.2d 813 (La.1974).
*876 In our view, several policy factors favor allowing a biological father to avow his child where such action will result in dual paternity. First, a biological father is susceptible to suit for child support until his child reaches nineteen years of age. La. Civ.Code art. 209. Second, a child who enjoys legitimacy as to his legal father may seek to filiate to his biological father in order to receive wrongful death benefits or inheritance rights. Smith v. Jones, 566 So.2d 408, 412-413 (La.App. 1 Cir.1990); Gnagie v. Department of Health and Human Resources, 603 So.2d 206, 210 (La.App. 1 Cir.); writ den. 608 So.2d 174 (La. 11/13/92). It seems only fair, in light of the obligations to which a biological father is susceptible and the multitude of benefits available to the biological child due to the biological link, that the biological father should be afforded at least an opportunity to prove his worthiness to participate in the child’s life. Alternatively, a biological father who cannot meet the best-interest-of-the-child standard retains his obligation of support but cannot claim the privilege of parental rights. Finding that a biological father clearly has the right to avow his illegitimate child under the law of this state, we now turn to the issue of whether P.W. asserted his action in a timely manner.
In order to determine the timeliness of P.W.’s filing, we must address the nature of any time limitations which may apply to avowal actions. Prescription may only be established by legislation. La. Civ.Code art. 3457. There is no prescription statute applicable to a father’s 14action to avow his biological child. Smith v. Dison, 95-0198 (La.App. 4 Cir. 9/28/95); 662 So.2d 90, 94; Putnam v. Mayeaux, 93-1251 (La.App. 1 Cir. 11/10/94); 645 So.2d 1223, 1226-27. Finding no prescription applicable, we now turn to the lach-es argument championed by the court of appeal.
The legal parents based their appeal on the argument that laches bars a biological father’s avowal action where it is not promptly asserted. As a matter of law, the purpose of the doctrine is to prevent an injustice which might result from the enforcement of long neglected rights and to recognize the difficulty of ascertaining the truth as a result of that delay. Barnett v. Develle, 289 So.2d 129 (La.1974). However, this court has clearly established that the common law doctrine of laches does not prevail in Louisiana. Picone v. Lyons, 92-0350 (La.7/1/92); 601 So.2d 1375, reh’g denied 9/3/92. Nevertheless, we have applied the doctrine in rare and extraordinary circumstances. See e.g. State ex rel. Medford v. Whitley, 95-1187 (La.1/26/96), 666 So.2d 652; State ex rel Winn v. State, 95-0898 (La.10/2/96), 685 So.2d 104; State ex rel. Cormier v. State, 95-2208 (La.10/4/96), 680 So.2d 1168 (“laches-like” provisions of La.Code Crim. Proc. art. 930.8(B) authorizes dismissal of any timely-filed inmate’s application when the state shows that delay has prejudiced its ability to respond).
We will consider the elements of the doctrine as they apply to the instant case to determine if rare and extraordinary circumstances exist in the instant case which merit application of the doctrine of laches. Regarding the first element of prejudice, we find no proof of prejudice to the child nor to the defendants in intervention, the legal parents. To the contrary, the trial judge expressly limited his ruling to a finding of fact that P.W. is the child’s father. The trial court passed on the issue of the best interest of the child because it was without sufficient evidence to make a knowledgeable finding. If evidence of the best interest of the child was lacking, certainly there is insufficient proof institution of this action has caused prejudice to the child. Thus, we find no injustice or prejudice may result from this avowal action. The legal parents failed to prove the first element of laches enunciated in Barnett v. Develle, 289 So.2d 129 (La. 1974).
Regarding the second element of delay, we surmise that the delay in this case is not entirely the fault of the biological father. It is apparent that the actions of the mother have caused |smuch of the delay. See Finnerty v. Boyett, 469 So.2d at 292 (Where the mother of the child effectively causes the delay in the biological father’s filing of an avowal action, the delay is not considered unreasonable so as to preclude avowal). P.W. regularly visited his child when he was *877 on good terms with the mother. This appears to be the reason why he did not file suit until after the affair ended and his attempts to visit his child were thwarted. P.W. filed his suit less than one year after it became apparent that he was riot free to visit his child, and approximately six years from the child’s birth. We find P.W. did not seek enforcement of long neglected rights because his filing was not unreasonable in light of circumstances which impute much of the delay to the mother. Thus, the legal parents failed to prove the second element of laches enunciated in Barnett v. Develle, 289 So.2d 129 (La.1974). Therefore, we find that both requirements precipitating a finding of laches are lacking. Simply put, our jurisprudence provides relief under the doctrine of laches only in rare and extraordinary circumstances. This is not such a case.
CONCLUSION
It is the province of the trial court to determine the nature and extent of a biological father’s rights to his illegitimate child. Maxwell v. LeBlanc, 434 So.2d 375 (La.1983). For this reason, we remand this matter to the trial court for such a determination. Assuming arguendo that P.W. can convince the trial court that his involvement in C.M.’s life is in the best interest of C.M., he should not be precluded from participating in the child’s life.
We reverse the ruling of the court of appeal which barred P.W.’s avowal action on the basis that his involvement at this stage of his child’s life will serve to prejudice the child. We reinstate in full the order of the trial court which recognized P.W. as C.M.’s biological father, ordered the evaluation by a mental health professional, and ordered that an evidentiary hearing be held to determine the best interest of C.M. Accordingly, we remand this matter to the trial court for disposition consistent with the findings herein.
DECREE
REVERSED AND REMANDED.
KNOLL, J., concurs and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
KIMBALL, J., dissents and assigns reasons.

 LEMMON, J., not on panel, recused. See Rule IV, Part 2, § 3.

. In this context, we use the term "illegitimate” to connote a child who is not bom in the marriage of his biological father to his mother and/or is assumed to be the child of another man. A child who enjoys legitimacy as to his legal father may also be the illegitimate child of his biological parent. Our jurisprudence allowing dual paternity provides that such a child may filiate to his biological father or the biological father may avow the child.

. Contrast this to the holding of the U.S. Supreme Court in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). We find the instant case distinguishable from the former case because, unlike Louisiana law, a California statute specifically prohibits dual paternity and mandates that the husband of the mother of the child bom during marriage is conclusively presumed to be the father. Such a finding is not tenable in Louisiana because the law of this State allows recognition of dual paternity and the Article 184 presumption of paternity is rebuttable.