JOHNSON, Justice,
concurring.
hi concur with the per curiam opinion vacating and setting aside the judgment of the court of appeal, and dismissing W.R.M.’s Petition to Establish Filiation, with prejudice. In my view, the trial court correctly granted the exceptions of no cause of action, no right of action and prescription. The retroactive application of LSA-C.C. art. 191 was not uneonstitu- *173 tional in this case because W.R.M. did not have a vested right to bring an avowal action, as he did not file his avowal action within a reasonable time, nor did he have an actual relationship with A.M.V. Thus, W.R.M.’s claim is perempted by LSA-C.C. art. 191. In addition, I believe that W.R.M.’s avowal action was prescribed even before LSA-C.C. art. 191 was enacted, because it was not filed within a “reasonable time” as required by Louisiana’s jurisprudence prior to the enactment of LSA-C.C. art 191.

Procedural History

This action began on July 7, 2003, when W.R.M. filed a “Petition to Establish Filiation” against H.C.V. and M.J.V., alleging that he is the biological father ofj^A.M.V.[1] The petition requested that A.M.V. be subjected to DNA testing to determine his biological parentage, and sought a judgment declaring W.R.M. to be the father of the child.
In response, H.C.V. and M.J.V. filed exceptions of no cause of action, no right of action, and prescription. While these exceptions were pending, the Louisiana Legislature passed Act 530 of 2004, which enacted LSA-C.C. art. 191. This article provided that an action to establish paternity of a child who is presumed to be the child of another man must be instituted within two years of the child’s birth. The article was effective on June 25, 2004, but deemed to apply retroactively to all pending cases. H.C.V. and M.J.V. filed supplemental exceptions based on the application of LSA-C.C. art. 191. W.R.M. then filed a supplemental and amending petition, pleading the unconstitutionality of Act 530. W.R.M. argued that the retroactive application of C.C. art. 191 would deprive him of a vested right to pursue his avowal action. H.C.V. and M.J.V. opposed the plea of unconstitutionality.
After a hearing, the trial court denied W.R.M.’s plea of unconstitutionality and proceeded to grant H.C.V. and MJ.V.’s exceptions of no cause of action, no right of action, and prescription. W.R.M. appealed the trial court’s decision to overrule his challenge to the constitutionality of LSA-C.C. art. 191 and the court’s decision to grant H.C.V. and M.J.V.’s exceptions of no cause of action, no right of action, and prescription.
The court of appeal reversed and remanded the matter, thereby declaring the retroactive application of LSA-C.C. art. 191 to be unconstitutional.[2] The court of appeal found that, prior to the passage of LSA-C.C. art. 191, plaintiff had a vested | sright to bring an avowal action. Thus, the court of appeal concluded that at the time W.R.M. filed his suit, he had a vested right to sue to avow paternity, and retroactive application of LSA-C.C. art 191 was an unconstitutional abridgment of his right to due process. The court of appeal reversed the trial court’s judgment which granted the exceptions of no cause of action, no right of action, and prescription. I believe that the court erred in its decision and reasoning.

The Avowal Action

Louisiana Law provides a presumption of paternity to the husband of the mother when a child is born during the marriage. LSA-C.C. art. 185.[3] While Louisiana’s *174 Civil Code previously provided that this presumption could be rebutted by the husband pursuant to LSA-C.C. arts. 187,[4] there was no statutory means provided for a purported biological father to recognize his illegitimate child prior to the enactment of LSAC.C. art. 191 in 2004.
As a result of this absence of statutory authority, Louisiana courts established the avowal action. This judicially recognized cause of action enabled biological fathers to establish their paternity of their illegitimate children. T.D. v. M.M.M., 1998-0167 (La.3/2/99), 730 So.2d 873 [citing Peyton v. Peyton, 92-107 (La.App. 3rd Cir.2/3/93), 614 So.2d 185; Geen v. Geen, 95-984 (La.App. 3rd Cir.12/27/95), 666 So.2d 1192, 1195, writ den. 96-0201 (La.3/22/96); 669 So.2d 1224; Putnam v. Mayeaux, 93-1251 (La.App. 1st Cir.11/10/94), 645 So.2d 1223; Chandler v. Grass, 600 So.2d 852 (La.App. 3rd Cir.1992) ].
Thus, a biological father could assert an avowal action despite the |4presumption of LSA-C.C. art. 184 that the mother’s husband is the father of all children born or conceived during the marriage. This created the potential of “dual paternity,” whereby the mother’s husband is the child’s legal father, but the biological father may also assert some parental rights.
In T.D. v. M.M.M., supra, this Court explained the rationale behind the “dual paternity” doctrine by noting policy factors which favored allowing a biological father to avow his child where such action will result in dual paternity. First, the Court observed that a biological father is susceptible to suit for child support. Secondly, a child may seek to filiate to his biological father in order to receive wrongful death benefits or inheritance rights. Thus, this Court reasoned that “[i]t seems only fair, in light of the obligations to which a biological father is susceptible and the multitude of benefits available to the biological child due to the biological line, that the biological father should be afforded at least an opportunity to prove his worthiness to participate in the child’s life.” T.D., 730 So.2d at 876. However, this Court also recognized that an avowal action must be asserted in a timely manner, and that a biological father who cannot meet the best interest of the child standard, retains his obligation of support, but cannot claim the privilege of parental rights. Id.
When W.R.M.’s “Petition to Establish Filation” was filed, there was no statutory time limitation for filing an avowal action. An action for avowal was a judicially-recognized action only, which was required to be filed within a reasonable period of time. On June 25, 2004, while W.R.M.’s action was pending before the trial court, 2004 La. Acts 530, which enacted LSA-C.C. art. 191, became effective.[5] This arti *175 cle generally provided for a two-year | ¿peremptive period for bringing an avowal action.
On June 29, 2005, while W.R.M.’s appeal was pending in the Third Circuit, 2005 La. Acts. No. 192, which enacted LSA-C.C. art. 198, became effective.[6] | (¡This article reduced the peremptive time period for bringing an avowal action from two years to one year.
On March 1, 2006, well after the effective date of Act 192, the court of appeal rendered its decision in this case, and concluded that “retroactive application of LSA-C.C. art. 191 is an unconstitutional abridgement of a right to due process.”[7]
In my view, the legislature clearly established its intent that Article 191 should be applied both prospectively and retroactively. Thus, LSA-C.C. art. 191 applies to W.R.M/s avowal action unless retroactive application would violate the constitutional prohibitions against impairment of contractual or vested rights.

Due Process

This Court in Bourgeois v. A.P. Green Indus., Inc., 2000-1528 (La.4/3/01), 783 So.2d 1251 held that when a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process. Under Louisiana law, a cause of action accrues when a party has the right to sue. Id. at 1259.
A “vested right” is “that case when the right to enjoyment, present or ^prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit .... does not *176 constitute a vested right.” Sawicki v. K/S Stavanger Prince, 2001-0528 (La.12/7/01), 802 So.2d 598, 604 (Emphasis added).
In this matter, I am of the opinion that W.R.M. did not have a vested right to pursue his avowal action. While I acknowledge that prior to the enactment of LSA-C.C. art. 191 there was no set prescriptive period for bringing an avowal action, the right to pursue such an action was not absolute. The jurisprudence provided that an avowal action had to be brought “promptly” or within a “reasonable time,” and other issues such as the actual relationship with the child and the child’s best interests must be considered.[8]
*177 |sThe United States Supreme Court has considered the rights of biological fathers in several cases.[9] I derive from this jurisprudence that a biological father’s factual relationship with his child is of far greater significance than his biological relationship.
Thus, based on the above jurisprudence, it is my belief that W.R.M. did not have a complete and unconditional right to pursue his avowal action. I am of the opinion that the right of avowal is not absolute, and that it is the actual relationship with the child, and the timing of the action that are *178 determinative. Because W.R.M. had no vested right to pursue his avowal action, I believe that the trial court correctly applied LSAC.G. art. 191 .retroactively to W.R.M.’s claim. Thus, W.R.M.’s avowal action is perempted based on the two-year time period imposed by that article.[10] I further believe that W.R.M.’s avowal action is prescribed even if Article 191 is not retroactively applied.

Exception of Prescription

I agree with the trial court’s determination that W.R.M. did not file his action within a reasonable time. The record reflects that W.R.M. was aware of the possibility that he was A.M.V.’s father from the moment that H.C.V. told him that she was pregnant, because of their ongoing sexual relationship. While there has been no determinative DNA testing, it is clear from the evidence and testimony | inthat W.R.M. suspected from the beginning that A.M.V. was his biological son. In addition, the record is replete with evidence that H.C.V. suspected that W.R.M. might be the biological father. Despite these suspicions, W.R.M. did nothing to hold A.M.V. out as his son until late 2002, nor did he pursue an avowal action prior to 2003, when A.M.V. was almost nine years old. It is clear from the record that W.R.M. did not enjoy an actual father-son relationship, or a substantial relationship of any quality, with A.M.V. While W.R.M. did see A.M.V. during the course of his affair with H.C.V., after reviewing the evidence, I am convinced that these “visits” were primarily attributable to the convenience of H.C.V. and W.R.M. so that they could create opportunities to pursue their sexual relationship, rather than for the purpose of W.R.M. and A.M.V. fostering a father-son relationship.
I am mindful of the fact that A.M.V. is apparently unaware of the possibility of W.R.M.’s paternity. Considering that A.M.V. is twelve years old at this point in time, and considering that he is living with both H.C.V. and M.J.V., who he believes are his parents, it would not be in the best interests of A.M.V. to allow W.R.M. to pursue an avowal action. I agree with the reasoning set forth in Revision Comment (e) to Article 198: “Requiring that the biological father institute the avowal action quickly is intended to protect the child from the upheaval of such litigation and its consequences in circumstances where the child may actually live in an existing intact family with his mother and presumed father or may have become attached over many years to the man presumed to be his father.” Allowing W.R.M. to pursue an avowal action at this point in time would be harmful to the innocent child, A.M.V.

\ ^Exceptions of No Cause of Action and No Right of Action

In addition, I believe that the trial court properly granted the exceptions of no cause of action and no right of action. The purpose of an exception of no cause of action is to determine the legal sufficiency of the petition. Smith v. Cole, 553 So.2d 847 (La.1989). The function of an exception of no right of action is to question whether a particular litigant who has set forth a cause of action is the proper party to judicially enforce the cause of action asserted. Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary, 2005-2364 (La.10/15/06), 939 So.2d 1206.
The two-year time period set forth in Article 191 (and the one-year time period set forth in Article 198) are peremptive in nature. Our Civil Code defines peremp *179 tion as “a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.” LSA-C.C. art. 3458. Peremption, unlike prescription, destroys the right. Because I believe that the trial court properly applied Article 191 retroactively, W.R.M.’s cause of action ceased to exist two years after A.M.V.’s birth, and he no longer had a right to assert such an action. Thus, the Exceptions of No Cause of Action and No Right of Action were correctly granted.
For these reasons, I concur with the per curiam opinion.

. The "Petition to' Establish Filiation” was properly considered an "avowal action” by the lower courts.

. W.R.M v. H.C.V. & M.J.V., 05-425 (La. App.3Cir.3/1/06) 923 So.2d 911.

.LSA-C.C. art. 185 provides in pertinent part: “The husband of the mother is presumed to be the father of a child born during the marriage.” This presumption was previously codified in LSA-C.C. art. 184. For a detailed history of this presumption see T.D. *174 v. M.M.M., 98-0167 at 1-4 (Kimball, Justice dissenting), 730 So.2d at 880-882.

. LSA-C.C. art. 187 provides in pertinent part: “The husband may disavow paternity of the child by clear and convincing evidence that he is not the father.”

. Act 530 of 2004 provided, in pertinent part:
Section 1. Civil Code Article 191 is hereby enacted to read as follows:
Art. 191. Father’s action to establish paternity; time period.
A man may establish his paternity of a child presumed to be the child of another man even though the presumption has not been rebutted.
This action shall be instituted within two years from the date of birth of the child, except as may otherwise be provided by law. Nonetheless, if the mother in bad faith deceives the father of the child regarding his paternity, the action shall be instituted within one year from the date the father knew or should have known of his paternity, but no more than ten years from the date of the birth of the child.
*175 Section 2. R.S. 9:395.1 is hereby enacted to read as follows:
§ 395.1 Exception to time limitation for establishment of paternity
The two-year peremptive period in Civil Code Article 191 shall not apply to the Department of Social Services providing services in accordance with 42 U.S.C. 666.
Section 3. The provisions of this Act shall be applied both prospectively and retroactively and shall be applied to all pending claims.
(Emphasis added).

. Act 192 of 2005 provided, in pertinent part: Section 1. Chapters 1, 2, and 3 of Title VII of Book I of the Civil Code, presently comprised of Articles 178 through 211, are hereby amended and reenacted to comprise Chapters 1 and 2 of Title VII of Book I of the Civil Code, consisting of Articles 184 through 198, to read as follows:
[[Image here]]
Art. 198. Father’s action to establish paternity; time period
A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.
If the child is presumed to be the child of another man, the action shall be instituted within two years one year from the day of the birth of the child. Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, whichever first occurs.
In all cases, the action shall be instituted no later than one year from the day of the death of the child.
The time periods in this Article are peremp-tive.
[[Image here]]
Section 3. The provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date.
(Emphasis added)

. While the court of appeal applied LSA-C.C. art 191, the application of either Article 191 or Article 198 would serve as a time bar to W.R.M.’s action.

. In Smith v. Jones, 566 So.2d 408 (La.App. 1st Cir.1990), the court allowed an avowal action where the alleged biological father had no actual relationship with the child, but where the action was instituted within three months of the child's birth. While the court recognized the right to avowal, it held that the right should not be absolute. The court stated: “The line of cases which have expanded the rights of illegitimate fathers are quite consistent in the holding that it is the actual relationship with the child that is determinative, not the mere biological connection where the biological father has chosen not to timely develop it. Thus a biological father who knows or has reason to know of the existence of his biological child and who fails to assert his rights for a significant period of time cannot later come forward and assert paternity.” Smith, 566 So.2d at 414. (Emphasis added).
In Putnam v. Mayeaux, 93-1251 (La.App. 1st Cir. 11/10/94), 645 So.2d 1223, the court held that an avowal action filed one year and three days following the birth of the child was filed within a reasonable time. The Court cited earlier cases for the proposition that the right to avowal should not be absolute, and that it is the actual relationship with the child that is determinative. The court also quoted approvingly other jurisprudence holding that a biological father who knows, or has reason to know, of the existence of his biological child and who fails to assert his rights for significant period of time, cannot later come forward and assert paternity. (Emphasis added).
In Geen v. Geen, 95-984 (La.App. 3rd Cir.12/27/95), 666 So.2d 1192, the Court held that biological fathers who meet certain prerequisites have a right of avowal. The court determined that under the particular facts of that case, the biological father's avowal action, filed nineteen months after the child's birth, was filed within a reasonable time. The Court reasoned that a right of avowal is not absolute, and that it is the actual relationship with the child that is determinative, not the mere biological connection. Geen, 666 So.2d at 1194. The Court agreed with earlier jurisprudence which held that a biological father who knows, or has reason to know, of the existence of his biological child, and who fails to assert his rights for a significant period of time, cannot later come forward and assert paternity. Id. (Emphasis added).
In Bolden v. Rodgers, 99-417 (La.App. 5th Cir.9/28/99), 746 So.2d 88, the Court recognized that the right to avowal is not absolute, and that it is the relationship with the child that is determinative, not the mere biological connection. Thus a biological father who knows, or has reason to know, of the existence of his biological child and who fails to assert his rights for a significant period of time cannot later come forward and assert paternity. (Emphasis added).
In Parker v. Buteau, 1999-519 (La.App. 3rd Cir.10/13/99), 746 So.2d 127, the court considered the timeliness of an avowal action brought eleven years after the child's birth. The alleged father had argued that he was in a continuous relationship with the mother from the time the child was born, and was promised by the mother that he would be allowed to raise the child. The Court affirmed the trial court's grant of an exception of prescription, reasoning that the alleged biological father failed to provide a reasonable explanation as to why he waited eleven years to bring the avowal action. The Court noted that although a biological father has a right to bring an avowal action despite the presumption in LSA-C.C. 184, the jurisprudence requires that the action be brought promptly. Parker, 746 So.2d at 129. The Court also recognized that the greater the period of time which elapses from the child's birth to the bringing of the action, the less favorably such an action should be viewed. Id. (Emphasis added).
In Smith v. Cole, 553 So.2d 847 (La. 1989), this Court recognized the importance of the *177 relationship with the child when analyzing a biological father's rights. This Court noted that “[w]hen they have shown an actual relationship with their illegitimate child, biological fathers have received substantial protection and recognition of their due process and substantive rights through the United States Supreme Court.” Smith, 553 So.2d at 851.

. The Court first considered the Due Process rights of biological fathers in Stanley v. Ill., 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), wherein the Court struck down an Illinois statute which established an irrebutta-ble presumption that fathers of illegitimate children were unfit to have custody of those children. Thus, such children were automatically made wards of the state upon the mother's death, and the biological father’s relationship with the child was not considered. Mr. Stanley had lived and cared for his children for their entire lives, but had no opportunity to show his fitness as a parent. The Court noted that "[t]he right to conceive and to raise one’s children have been deemed ‘essential,’ ’basic civil rights of man,’ ” and, thus, the State could not deprive the unwed biological father of his children without due process. The Court held that parents in Mr. Stanley’s position were constitutionally entitled to a hearing on their fitness before custody of the children could be taken away by the state.
The unwed father's substantive rights were also recognized in Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) in which the Court held that the biological father’s "substantive rights were not violated by application of a ‘best interests of the child' standard.” The Quilloin Court upheld a Georgia statute which allowed illegitimate children to be adopted without the consent of the biological father. The father in Quilloin had an opportunity to legitimate his child before the adoption, and object to the adoption, but failed to do so. Thus, the adoption issue was resolved according to the best interest of the child.
A biological father’s substantive rights were further defined in Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). The Lehr Court was most concerned with whether the State had "adequately protected his opportunity to form such a relationship.” Id. at 264, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614. The Court explained that "the significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child’s future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie.” Lehr, 463 U.S. at 262, 103 S.Ct. at 2993.
More recently, in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), the Court considered the constitutionality of a California statute which provided that a child bom to a married woman living with her husband, who is neither impotent nor sterile, is presumed to be a child of the marriage, and that this presumption may be rebutted only by the husband or wife, and then only in limited circumstances. The Court held that the presumption in the statute did not infringe upon the due process rights of another man who wanted to establish his paternity of such a child. In Michael H., the biological father argued that he had a constitutionally protected liberty interest in the parental relationship he had established with the child, and that protection of the mother and husband's marital union was an insufficient state interest to support termination of that relationship. In a plurality opinion, the Court disagreed and held that the biological father failed to meet his burden of proving that his claimed liberty interest was "one so deeply imbedded with society’s traditions as to be a fundamental right.” Michael H., 491 U.S. at 111, 109 S.Ct. at 2336.

. W.R.M.’s action would also be perempted pursuant to the one-year period set forth in LSA-C.C. 198.