769 So.2d 1249 (2000)
Alvin MASON, Sr. as Natural Tutor of The Minors, Alvin Mason, Jr. and Jabyron A. Mason, and Arthur Linton, Individually and on Behalf of His Deceased Infant Son, Cameron Bernard
v.
The KANSAS CITY SOUTHERN RAILWAY COMPANY, Paul Wilson, J.R. Scott, The State of Louisiana, Through The Department of Transportation and Development and St. John The Baptist Parish.
No. 00-CA-208.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2000.
*1250 Newton K. Muhammad, Jacqueline L. Savoie, New Orleans, Louisiana, Attorneys for Appellant.
Geri Broussard-Baloney, Garyville, Louisiana, Attorney for Appellees.
Panel composed of Judges CHARLES GRISBAUM, Jr., MARION F. EDWARDS and CLARENCE E. McMANUS.
EDWARDS, Judge.
Mr. J.T. Holmes sought to intervene in a tort suit on behalf of his alleged biological son, JaByron Mason, in the Fortieth Judicial District Court. In addition, Mr. Holmes filed a "Petition to Establish Filiation" to JaByron in those proceedings. The court maintained exceptions of lack of *1251 procedural capacity and no right of action to his petitions, from which judgment he now appeals. For the reasons to follow, we find that Mr. Holmes has a right of action for avowal purposes, but has no right of action and lacks procedural capacity to intervene in the tort suit.
On June 6, 1998, Alvin Mason Sr., as natural tutor of Alvin Mason Jr. and JaByron Mason, filed a petition for damages arising out of the death of the children's mother, Emily Bernard. Ms. Bernard was killed on May 4, 1998, when her vehicle was struck by a Kansas City Railway Company (Kansas City) train. At the time of the accident, Ms. Bernard was nine months pregnant with the child of Arthur Linton. The infant was delivered by emergency Caesarian section but died of his injuries. Linton joined in the original suit individually and on behalf of the child. Made defendants were the Kansas City Railway Company, Paul Wilson, the operator of the train engine, J.R. Scott, engineering consultant of the railway, the State of Louisiana through the Department of Transportation and Development (DOTD) and the Parish of St. John the Baptist.
On May 11, 1999, J.T. Holmes filed a petition for intervention, alleging that he is the biological father of JaByron and sought compensation of behalf of that child. On May 25, 1999, Kansas City filed an Exception of Lack of Procedural Capacity to that intervention. On June 4, 1999, Holmes filed a Petition to Establish Filiation, including a request for blood and tissue tests.
In response to the intervention, St. John filed an Exception of Lack of Procedural Capacity and Mason and DOTD each filed answers. DOTD's answer included an (untitled) exception of no cause of action. Kansas City filed Exceptions of No Cause and No Right of Action to the petition for filiation, as well as an answer. On July 13, 1999, subsequent to his answer, Mason filed Exceptions of Prescription, No Cause of Action, and Lack of Procedural Capacity.
Following a hearing on the exceptions, the trial court maintained the exception of no right of action to the petition for filiation and the exception of lack of procedural capacity to the petition of intervention.
In the intervention, Holmes alleged that he is the biological father of JaByron, that he had relations with Ms. Bernard at the time the child was conceived, that Ms. Bernard told him JaByron was his child, and that he provided financial support to him. He further alleged that he visited the child and told his family about him, visiting with him on holidays. Holmes requested compensation on behalf of JaByron for the wrongful death of Ms. Bernard.
In the petition to establish filiation, Holmes again alleged that he is the father of JaByron and requested blood testing, asking the court to order Alvin Mason Sr. to submit JaByron for these tests. Holmes further stated that he had informally acknowledged the child by representing JaByron to his Holmes' family as his son, and again averred that he had provided financial support and visited on holidays.
The trial court stated in its reasons for judgment that Civil Code Articles 193 through 197 grant the right of action for filiation to the child and not to the parent. Hence, the court found that Mr. Holmes had no right of action as to filiation. However, the court construed the intervention as an avowal action.
We agree with the finding of the trial court that an action for filiation belongs to the child and not to the parent. However, we are obliged to construe every pleading so as to do substantial justice.[1] The wording of the petition makes it apparent *1252 that the proceeding to establish filiation is in fact an attempted avowal action. Mr. Holmes is attempting to establish paternity by blood tests. As the trial court acknowledged, Louisiana Courts have traditionally recognized a biological father's right to his illegitimate child by means of an avowal action.[2]
The Civil Code...provides no process for a biological father to establish his parentage of his illegitimate child.
Nevertheless, the jurisprudence has recognized an avowal action, by which biological fathers may establish their paternity of their illegitimate children. T.D. v. M.M.M., 98-167 (La.3/2/99) 730 So.2d 873.[3]
Even with regard to legitimate children, a biological father has been found to have such avowal action.[4]
The essential function of the exception of no right of action is to provide a threshold device for terminating a suit brought by one with no legal interest to assert it, that is, to challenge the plaintiff's interest in the subject matter of the suit or his lack of capacity to proceed with the suit.[5] This exception is not available to urge a defense to the effect that the plaintiff is without interest simply because the defendants have a defense to the plaintiffs actions, nor can this exception of no right of action be invoked to determine whether a particular defendant can stand in judgment in a particular case.[6] Any such defenses must go to the merits only.[7]
The finding by the trial court that Mr. Holmes did not prove his case by clear and convincing evidence goes to the contention that he is not the biological father, which is a defense to the avowal action and thus not properly the subject of an exception. Further, since there is no prescription statute applicable to a father's action to avow his biological child,[8] the finding by the trial court that Mr. Holmes's action is untimely relates to the additional defense of laches.
A biological parent who knows of or has reason to know of the existence of his biological child and who fails to assert his rights for a significant amount of time, cannot come forward later and assert paternity.[9] The doctrine of laches addresses itself to the evidentiary effect of delay. It is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of a matter in controversy, and doing justice between parties and on the public policy of discouraging stale and antiquated claims in the interest of the peace and repose of society.[10] The Supreme Court has considered the elements of the doctrine of laches in avowal cases "to determine if rare and extraordinary circumstances exist..., which merit application of the doctrine..."[11] The doctrine of laches can provide a defense when various factors peculiar to the particular case, coupled with the passage of time, are present. However, to the extent that laches is available in Louisiana, it is *1253 an affirmative defense not properly before a court via an exception.[12] The trial court could not grant judgment on an exception of no right of action based on the timeliness of Mr. Holmes' petition, although laches is a viable defense in the present case. Mr. Holmes has a right of action in the avowal proceedings.
With regard to the intervention, the trial court correctly cited LSA-C.C. art. 2315.2 in finding that the wrongful death action in the present case belongs to the children. The tutor appointed by a court of this state is the proper plaintiff to sue to enforce a right of an unemancipated minor, when one or both of the parents are dead, the parents are divorced or judicially separated, or the minor is an illegitimate child.[13] Under LSA-C.C. art. 256, the father who has acknowledged his illegitimate child is entitled to be appointed natural tutor. Alvin Mason Sr., who has acknowledged JaByron, filed suit as his natural tutor. There is no authority that grants a right of tutorship to the father of his unacknowledged illegitimate child. Considering the above, it is clear that the intervention discloses no facts that would permit Mr. Holmes to obtain damages on behalf of JaByron as a result of the instant accident. Further, as the court found, the children's rights have already been exercised and protected via a suit having been filed on behalf of the children by the acknowledging father.
Although we find that the intervention was incorrectly designated by the trial court as a petition for avowal, the exception of lack of procedural capacity to that intervention, filed by Kansas City and St. John prior to any answer, was correctly granted. In this regard we note that appeals are taken from the judgment, not the written reasons for judgment. On appeal, we review judgments and, where the court of appeal believes that the trial court reached the proper result, the judgment will be affirmed.[14]
For these same reasons, we find sua sponte that Mr. Holmes has no right of action in the intervention, since he does not belong to the particular class to which the law grants a remedy for the particular harm alleged.
Because of our above findings we find it unnecessary to address Mr. Holmes' other assignments of error. For the foregoing reasons, the judgment is set aside in part and we find that Mr. Holmes has a right of action in the avowal proceedings. In all other respects the judgment is affirmed. The parties are taxed their own costs of these proceedings.
SET ASIDE IN PART; AFFIRMED IN PART; REMANDED.
NOTES
[1] LSAC.C.P. art. 865; Smith v. Trattler, 96-225 (La.App. 5th Cir. 9/18/96), 681 So.2d 961, 963.
[2] T.D. v. M.M.M., 98-167 (La.3/2/99) 730 So.2d 873.
[3] Bolden v. Rodgers, 99-417 (La.App. 5th Cir. 9/28/99), 746 So.2d 88, 92.
[4] See e.g. Putnam v. Mayeaux, 93-1251 (La. App. 1st Cir. 11/10/94); 645 So.2d 1223.
[5] Teachers' Retirement System of Louisiana v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984); also Smith v. Cole 541 So.2d 307, 311, (La.App. 5th Cir. 1989); affirmed 553 So.2d 847, (La.1989).
[6] Smith v. Cole, supra at p. 311.
[7] Smith v. Cole, supra at p. 311; also Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir. 1979).
[8] T.D. v. M.M.M., supra, p. 876.
[9] Bolden v. Rodgers, supra, p. 92.
[10] Songy v. Songy, 98-1103 (La.App. 5th Cir. 6/1/99), 738 So.2d 122, 125, citing Barnett v. Develle, 289 So.2d 129, 139 (La.1974).
[11] T.D. v. M.M.M., supra, p. 876.
[12] Osborne v. Stone, 476 So.2d 809, (La. 1985); Walker Resources, Inc. v. Jif's Petroleum Services, Inc., 550 So.2d 958 (La.App. 5th Cir.1989).
[13] LSA-C.C.P. art. 683.
[14] Schulingkamp v. Ochsner Clinic, 99-558 (La.App. 5th Cir. 1/25/00, 752 So.2d 275; writ denied 2000-C-618 (La.4/20/2000)), 760 So.2d 348.