780 So.2d 608 (2001)
Russell PAVICH, M.D. Coroner
v.
ST. LANDRY PARISH POLICE JURY, et al.
No. 00-0587.
Court of Appeal of Louisiana, Third Circuit.
February 28, 2001.
*609 David L. Carriere, Opelousas, LA, Counsel for Plaintiff/Appellant, Russell Pavich, M.D. Coroner.
Hon. Kenneth Boagni Jr., Opelousas, LA, Counsel for Defendants/Appellees, Town of Grand Coteau, LA, Town of Washington, LA.
I. Jackson Burson Jr., Assistant District Attorney, Eunice, LA, Counsel for Defendants/Appellees, St. Landry Parish Police Jury, James C. Eaglin, Pat Miller, Huet Picheau Dupre, Ronald E. Buschel, Ralph Nezat, Roy A. Guilbeau, Ronald Dugas, Wayne Ardoin, Howard Austin, Andrew Castille, Al Red Bihm, Gary Courville, Allen Guillory.
Jerry Joseph Falgoust, Dauzat, Falgoust, Caviness, Opelousas, LA, Counsel for Defendant/Appellee, City of Opelousas, LA.
Jacque Berchmans Pucheu Jr., Pucheu, Pucheu, Eunice, LA Counsel for Defendant/Appellee, City of Eunice, LA.
Chuck David Granger, Morrow, Morrow, Opelousas, LA, Counsel for Defendant/Appellee, Town of Krotz Springs, LA, Town of Leonville, LA, Town of Port barre, LA, Town of Arnaudville, LA.
Clovus Jackson Ashley II, Opelousas, LA, Counsel for Defendant/Appellee, Town of Melville, LA.
Court composed of Chief Judge DOUCET,, Judge SULLIVAN, and Judge GREMILLION.
GREMILLION, Judge.
The defendants, the St. Landry Parish Police Jury, the City of Opelousas, and the City of Eunice, appeal the trial court's judgment granting and making peremptory a writ of mandamus filed by the plaintiff, Russell Pavich, M.D., Coroner, the St. Landry Parish Coroner. Pavich was awarded fees for services rendered, operational expenses, and attorney's fees certified as being necessary or unavoidable expenses of the coroner's office. For the following reasons, we affirm in part and reverse in part.

FACTS
In order to understand this matter, we will review the history preceding Pavich's appointment as coroner. David Carriere, an attorney, was elected coroner for St. Landry Parish upon the failure of any physician to qualify for the position. Prior to taking office on March 25, 1996, he filed a petition for writ of mandamus seeking funding for the coroner's office after the Police Jury rejected a budget proposed by him which included a salary, insurance, and retirement benefits for him, as well as salaries for a chief deputy coroner, secretary, investigator, photographer, and licensed practical nurse. The budget further *610 requested the Police Jury provide him with office space and reimburse him for office supplies and equipment. Three months after taking office, Carriere resigned due to the failure of the Police Jury to provide sufficient funds. Pavich was appointed coroner by the Police Jury on June 17, 1996. Thereafter, he was elected to the position without opposition in September 1996. After taking office, Pavich joined Carriere's suit as a plaintiff.
The trial court granted Carriere's writ of mandamus and ordered the Police Jury to provide the coroner an annual salary of $25,000, health and retirement benefits, and an operational budget of $96,000. It further ordered the Police Jury to turn over the entire budgeted amount to the coroner and for the coroner to turn over to the Police Jury any income generated by its office.
On November 4, 1996, while an appeal in this matter was pending before this court, Pavich submitted his 1997 estimated budget to the Police Jury. In the budget, he requested a $45,000 salary, $5,100 in health insurance, $3,600 in retirement benefits, and $161,964 in mandated expenses, for a total budget of $215,664.
On appeal, we affirmed the $96,000 budget, but reversed the remainder of the trial court's judgment. Carriere v. St. Landry Parish Police Jury, 96-641 (La. App. 3 Cir. 4/9/97); 693 So.2d 1201. We held that only the Police Jury could decide how the coroner was to be paid, whether by salary, on a fee basis, or a combination of both. On September 2, 1997, while writ applications were pending before the supreme court, the Police Jury's Finance Committee authorized the treasurer to place $29,000 from the capital outlay fund into the Coroner's Emergency Contingency Fund. The Police Jury's president was authorized to use these funds, at his discretion, to pay any emergency coroner bills. Writs were granted to both parties on September 26, 1997. Carriere v. St. Landry Parish Police Jury, 97-1914, 97-1937 (La.9/26/97); 701 So.2d 963.
On September 30, 1997, Pavich submitted his 1998 estimated budget, requesting a $45,000 salary, $5,100 in health benefits, $3,600 in insurance, and $161,964 in mandated expenses, for a total budget request of $215,664. On October 22, 1997, Pavich and the Police Jury entered into an interim agreement to provide the coroner's office with funding while the Carriere suit was pending before the supreme court. The agreement was effective retroactive to October 1, 1997.
On March 4, 1998, the supreme court rendered judgment affirming in part and reversing in part our judgment. Carriere v. St. Landry Parish Police Jury, 97-1914, 97-1937 (La.3/4/98); 707 So.2d 979. The supreme court affirmed that only the Police Jury could decide how the coroner would be compensated, either by salary, on a fee basis, or by a combination of both. Since the Police Jury elected to pay the coroner on a fee basis, the supreme court held that it was not responsible for paying the salaries of the coroner's ancillary staff. See La.R.S. 33:1555. Finally, the supreme court held that the Police Jury was responsible for paying all of the necessary or unavoidable operational expenses of the coroner's office and listed the items meeting that standard. Excluded from this list were the salaries for the coroner's ancillary staff. Since it had already held that the coroner was responsible for paying his ancillary personnel out of the fees collected by his office, the court held that he could not "avoid this result by calling deputy coroners and other employees `necessary or unavoidable' expenses and hiring them on a contract basis." Id. at 986. Following this decision, the Interim Operating Agreement was terminated.
On March 17, 1998, David Carriere, Pavich's counsel, requested the Police Jury to set a salary for Pavich and his ancillary staff. The assistant district attorney representing the Police Jury, responded on April 7, 1998, stating that the Police Jury was proposing an annual budget of $13,000 *611 for autopsies and the transportation of bodies and $67,200 for all other mandated expenses. On July 9, 1998, Pavich and his counsel met with Police Juror Wayne Ardoin and arrived at a proposed budget of $96,000 and an agreement that Pavich would be authorized to bill the St. Landry Parish municipalities for his services, fees, expenses, and costs. On July 13, 1998, the Police Jury approved $96,000 for the Coroner's 1998 budget, emphasizing that the coroner would be reimbursed on a "fee for service basis" for the issuance of death certificates and coroner's emergency certificates, provided the bills were properly documented.
In his estimated 1999 budget, Pavich requested a budget of $132,264 from the Police Jury, including $33,000 for autopsies.[1] The Police Jury approved a $96,000 budget. On June 8, 1999, Pavich requested the Finance Committee pay $34,435.63 in legal fees incurred by him between June 1996 and March 1999. The Police Jury denied this request. Thereafter, Pavich submitted his estimated 2000 budget to the Police Jury requesting $98,402 in mandated expenses. In an addendum, he requested an additional $62,850 for autopsies and a storage cooler and $40,000 for legal fees incurred between June 1996 through the present. The legal fees were certified as being a necessary, unavoidable, and reasonable expenses of his office. Including the addendum, Pavich's estimated 2000 budget request totaled $201,252.
On June 16, 1999, Pavich, in his capacity as coroner, filed a Petition for Writ of Mandamus against the Police Jury, its individual jurors, Opelousas, Eunice, Sunset, Port Barre, Leonville, Krotz Springs, Melville, Palmetto, Grand Coteau, Arnaudville, Washington, and Cankton. He sought payment for services rendered, operational expenses of his office, and legal fees certified as reasonable and necessary expenses.[2] Pavich further requested that the Police Jury be ordered to comply or face contempt proceedings for failing to provide his office with a budget pursuant to the supreme court's decision in Carriere, 707 So.2d 979.
The Police Jury and its jurors filed Dilatory Exceptions of Prematurity, Want of Amicable Demand, Unauthorized Use of Summary Proceedings, and Improper Cumulation of Actions and Peremptory Exceptions of Res Judicata, No Cause of Action, and No Right of Action. On September 2, 1999, Pavich submitted invoices to the Police Jury representing fees and operational expenses for the years 1996 through 1997. He also sent invoices to each municipality representing his fees for 1996 through 1999.[3]
On September 30, 1999, the trial court issued an Interim Order referring all exceptions to the merits of the matter. Thereafter, Opelousas, Krotz Springs, Port Barre, Leonville, Arnaudville, Eunice, Washington, and Grand Coteau answered Pavich's petition, each alleging that his claims representing fees for the years 1996 through 1998 were prescribed since he failed to file a fee schedule prior to the last day of January of each year at issue, in accordance with La.R.S 33:1556(A)(6).[4] *612 The Police Jury amended its exception of no cause of action, alleging that Pavich had no cause of action against the individual jurors because the trial court's judgment in Carriere absolving them of individual liability became a final judgment. It further argued that a mandamus action was improper because the action sought to be enforced was discretionary in nature.
On November 12, 1999, Pavich filed a First Supplemental and Amending Petition for Writ of Mandamus to include the specific amounts owed by each defendant. Thereafter, the Police Jury, Eunice, Opelousas, Grand Coteau, and Washington filed answers pleading the equitable doctrine of laches as to the bills representing claims for fees rendered between 1996 and September 1999. The Police Jury and Eunice also plead prescription of one and three years pertaining to bills older than one or three years at the time the writ of mandamus was filed.
A bench trial was held on November 22, 1999. The trial court issued reasons for judgment on March 15, 2000, finding the Police Jury and remaining municipalities responsible for Pavich's fees for services rendered and operational expenses, including his legal fees. The trial court also held that the Police Jury must pay the legal expenses incurred by Pavich as a result of the Carriere case, because they were necessary and unavoidable expenses resulting from his attempt to obtain funding for his office. The trial court held that the three-year liberative prescription applied, and that the bills presented by Pavich would not have started prescribing until June 21, 1999, the date he filed suit.[5] It further held that Pavich's claims were not barred by res judicata, since the supreme court ordered the coroner to resubmit his past budget, and denied the remaining exceptions.
Pursuant to its findings, Pavich's writ of mandamus was granted and made peremptory and the Police Jury was ordered to pay him $17,500 in fees for services rendered during 1996 and 1997, and $54,320.63 in operational expenses, including legal fees, incurred between 1996 and September 28, 1999. The municipalities were ordered to pay fees for services as follows: (1) Opelousas$14,350 for 1996 through June 19, 1999; (2) Eunice$7,850 for 1996 through June 21, 1999; (3) Melville $1,500 for 1996 through May 24, 1999; (4) Leonville$300 for 1996 through March 7, 1999; (5) Arnaudville$700 for 1996 through January 19, 1999; (6) Washington $1,150 for 1996 through June 11, 1999; (7) Krotz Springs$1,000 for 1996 through June 17, 1999; (8) Grand Coteau $500 for 1996 through April 9, 1999. The trial court reserved Pavich's right to claim additional fees for services, operational expenses, and attorney's fees from the defendants for the dates asserted in the writ of mandamus. Judgment was rendered in this matter on March 24, 2000. The Police Jury, Opelousas, Eunice, and Washington have suspensively appealed, while Pavich has devolutively appealed from this judgment.

ISSUES
The Police Jury raises seven assignments of error on appeal. However these can be broken down into the following questions: Whether the trial court erred in failing to find that Pavich's claims for services were barred by laches, whether it erred in awarding him attorney's fees, and whether Pavich may pursue those fees via mandamus. Opelousas and Eunice also argue that Pavich's claims were barred by *613 laches and Eunice additionally argues that the services rendered by Pavich prior to July 1, 1999, were prescribed. On appeal, Pavich seeks an increase in attorney's fees for legal services required on appeal and thereafter.

STANDARD OF REVIEW
Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99); 732 So.2d 699. If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, its decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).

LACHES
We disagree with the Police Jury and Eunice's argument that Pavich's claims for services rendered prior to September 7, 1998, are barred by laches. The common law doctrine of laches does not prevail in Louisiana. T.D. v. M.M.M., 98-0167 (La.3/2/99); 730 So.2d 873; Picone v. Lyons, 601 So.2d 1375 (La.1992). "As a matter of law, the purpose of the doctrine is to prevent an injustice which might result from the enforcement of long neglected rights and to recognize the difficulty of ascertaining the truth as a result of that delay." T.D., 730 So.2d at 876.
The doctrine of laches addresses itself to the evidentiary effect of delay. It is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of a matter in controversy, and doing justice between parties and on the public policy of discouraging stale and antiquated claims in the interest of the peace and repose of society.
Mason v. Kansas City Southern Ry. Co., 00-208, pp. 5-6 (La.App. 5 Cir. 9/26/00); 769 So.2d 1249, 1252. However, the supreme court has recognized that the doctrine will apply in rare and extraordinary circumstances. T.D., 730 So.2d 873.
Upon reviewing the circumstances, we find that they are not so rare or extraordinary that laches should apply to bar Pavich's claims for fees earned during 1996 through 1998. All of the parties were aware of Carriere's lawsuit, of which Pavich was a party and which was pending, first, before this court and, then, before the supreme court. All knew that the outcome of this matter would have a direct effect on the funding of the St. Landry Parish Coroner's Office. Moreover, even though Pavich submitted budget requests for 1997 and 1998, the Police Jury failed to approve a budget for his office until it approved the 1998 budget on July 14, 1998, after the supreme court rendered its decision in Carriere on March 4, 1998, and more than seven months after the beginning of the Police Jury's fiscal year. It did set up a Coroner's Emergency Contingency Fund on September 18, 1997, placing $29,000 into the fund for the payment of the coroner's emergency bills. However, this agreement terminated after the March 4, 1998 Carriere decision was rendered.
Considering the confusion surrounding the coroner's office, including the election and resignation of Carriere, the appointment and election of Pavich, and the contention surrounding the coroner's office funding, it is understandable that there may have been a delay in the presentment of bills for payment. We find no legal error in the trial court's determination that laches does not apply in this instance. Accordingly, these assignments of error are without merit.

PRESCRIPTION
Eunice argues that Pavich's claims for fees for services rendered prior to July *614 1, 1999 are prescribed. We disagree. An action for the recovery of compensation for services rendered, including fees for public officials, is subject to a three-year liberative prescriptive period. La.Civ.Code art. 3494. The three-year liberative prescriptive period began running on June, 16, 1996, when Pavich filed his suit. Thus, this assignment of error is without merit.

LEGAL FEES
The Police Jury argues that the trial court erred in awarding Pavich legal fees for legal work performed between 1996 and September 28, 1999, and raises six assignments of error:
1) The trial court erred in finding that Pavich's alleged contract for legal services was void ab initio because it was not authorized by the attorney general, expenses incurred under the contract were not included in Pavich's annual budget request, and the terms of the contract were not authorized by the Police Jury.
2) The trial court erred in finding that Pavich's claim for attorney's fees incurred in his original suit against the Police Jury was not barred by res judicata because no fees were claimed or awarded in that suit.
3) The trial court erred in awarding Pavich attorney's fees in the absence of any statutory authority.
4) The trial court erred in failing to find that Pavich's attorney's fee bill was unreasonable in both kind and amount under the rule of Reed v. Washington Parish Police Jury, 518 So.2d 1044 (La.1988).
5) The trial court erred in finding that there was a real necessity for Pavich hiring special counsel.
6) The trial court erred in finding Pavich could use a writ of mandamus to compel performance of a discretionary duty.
Pavich certified that the expenses for legal work including legal fees incurred in the Carriere suit, were necessary, unavoidable, and reasonable expenses of his office. Since we find that the legal fees are not necessary or unavoidable expenses of the coroner's office, we will only address the third assignment of error.
In Carriere, 707 So.2d 979, the supreme court thoroughly examined which expenses were necessary or unavoidable pursuant to La.R.S. 33:1556(B)(1). That statute provides: "All necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the corner's office shall be paid by the parish when such expenses are certified by the coroner as being necessary or unavoidable." The supreme court held that Reed "limits the mandatory duty of parish governing bodies to fund expenses `certified by the coroner as necessary or unavoidable' by the standard of reasonableness."[6]Id. at 985. The court further stated that the budget request of the coroner must be "1) legitimately related to the function of his office, and 2) it must be in a reasonable amount." Id.
The supreme court reviewed the budget submitted by Carriere and listed the items which it found to be necessary or unavoidable expenses of the coroner's office. Those items were: accounting charges, association and dues, banking expenses, insurance/errors and omissions, insurance/non-owned automobiles, medical supplies, mobile phone, office copy and computer supplies, pager, postage, telephone service, and mileage reimbursement. The supreme court further held that amounts for office space, office equipment and supplies, utilities, and janitorial services were also necessary or unavoidable expenses of the coroner's office. Id. However, it excluded the salaries of the ancillary staff, even though the coroner *615 certified them as being necessary or unavoidable.
In Perron v. Evangeline Parish Police Jury, 00-1049 (La.App. 3 Cir. 01/31/00); 780 So.2d 515, this court recently held that the Evangeline Parish Police Jury was not responsible for paying the Evangeline Parish Coroner's legal fees, even though he certified them as being necessary or unavoidable expenses because they did not qualify as an "operational expense similar to office supplies, travel expenses, or education." Id. at p. 527.
Our court in Perron next addressed the effect of La.R.S 33:1556(F), and held this statute covered any necessary or unavoidable expenses not covered by La.R.S. 33:1556(B)(1). That statute provides, "Nothing herein shall be construed as prohibiting the payment by the parish or municipality of all necessary or unavoidable expenses certified by the coroner." After noting the absence of a mandate requiring the payment of any necessary or unavoidable expenses not covered by La.R.S. 33:1556(B)(1), we held that the trial court erred in ordering the police jury to pay any expenses other than those mandated by Subsection 1556(B)(1), even if they were certified as being necessary or unavoidable. Id.; see Carriere, 707 So.2d 979.
Finally, we compared the facts at issue in Perron to Gongre v. Mayor and Board of Alderman of Town of Montgomery, 98-677 (La.App. 3 Cir. 10/28/98); 721 So.2d 968, writ denied, 98-2954 (La.1/29/99); 736 So.2d 834, where we held that the trial court violated the constitutional requirement of separation of powers by ordering the local governing body to allocate funds for the payment of legal fees incurred by the chief of police in a suit against that public body, in the absence of statutory authority ordering the payment of such fees.
We find that the legal fees incurred by Pavich do not qualify as expenses "incident to the operation and functioning of the coroner's office," as the phrase was interpreted by us in Perron and the supreme court in Carriere. Despite Pavich's certification of the legal fees as necessary or unavoidable, we find that the trial court erred in ordering the Police Jury pay them. Moreover, we agree with Perron, that it would be a violation of the separation of powers were we to countenance the trial court's order. Since the decision to appropriate funds is a legislative function, it is not within the province of the judiciary to order a legislative branch of government to take such an action. Accordingly, in the absence of any statutory authority providing for the payment of Pavich's legal fees by the Police Jury, we find that the trial court erred in ordering the Police Jury to pay his legal expenses, even though they were certified as being necessary or unavoidable expenses of his office. The judgment of the trial court ordering the payment of legal fees is reversed.
In accordance with our finding that legal fees are not encompassed within the phrase "all necessary or unavoidable expenses," we deny Pavich's request for additional legal fees on appeal. Having found that Pavich is not entitled to reimbursement of his attorney's fees from the Police Jury, we need not consider the propriety of using a writ of mandamus to collect these fees.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed as to all fees ordered paid which have not prescribed pursuant to La .Civ.Code art. 3494; however, that part of the judgment ordering the payment of legal fees incurred by Pavich is reversed. The costs of this appeal are assessed equally between the plaintiff-appellant appellee, Russell Pavich, M.D., Coroner, the St. Landry Parish Coroner, and the defendants-appellees appellants, the St. Landry Parish Police Jury (Police *616 Jury), the City of Opelousas, and the City of Eunice.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] However, these expenses were excluded as necessary or unavoidable by the supreme court because the Police Jury is not responsible for every autopsy and it must approve the amount paid for each autopsy pursuant to La.R.S. 33:1560. Thus, the supreme court held that the Police Jury must be billed directly for these costs.
[2] The petition stated that an itemized statement representing the services and operational expenses sought was being prepared and would be submitted to the defendants as soon as possible.
[3] Palmetto, Sunset, and Cankton were dismissed from the suit without prejudice on September 9, 1999
[4] La.R.S. 33:1556(A)(6) states:

Notwithstanding any provision of this Section to the contrary, the affirmative approval of the governing authority of the parish or municipality shall be required for the coroner to charge more than two hundred fifty dollars for the performance of an autopsy. In addition, the affirmative approval of the governing authority of the parish or municipality shall be required for the coroner to charge for any expense, tests, costs, or other fees, when the charge for such expenses, tests, costs, or other fees exceed the maximum charges established in the coroner's annual fee schedule. In such fee schedule, the coroner shall list all fees for which a charge of fifty dollars is authorized by law. Such schedule shall be filed with the governing authority of each affected parish or municipality not later than the last day of January of each year.
[5] Pavich filed this writ of mandamus on June 16, 1999.
[6] In Reed, the supreme court held that the police juries duty to fund La.R.S. 16:6, which entitled district attorneys to reimbursement of certain expenses, was limited by the standard of reasonableness.