# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1263


**JOHN TAYLOR, ET AL.**

**VERSUS**

**LEGER CONSTRUCTION, LLC, ET AL.**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84,956
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED IN PART, REVERSED IN PART.**


**Decuir, J., concurs in the result.**

**Eddie J. Lambert**
**Attorney at Law**
**P. O. Box 88**
**Gonzales, LA 70707**
**(225) 647-9788**
**Counsel for Defendant/Appellee:**
**Post-Tension Slab-General**

**Michael Wayne Adley**
**Judice and Adley**
**P. O. Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**Counsel for Plaintiffs/Appellants:**
**John Taylor**
**Christine Taylor**

**Wayne M. Babovich**
**Babovich & Spedale**
**1539 Jackson Ave., Suite 610**
**New Orleans, LA 70130**
**(504) 310-3886**
**Counsel for Defendant/Appellee:**
**Roy Carubba**

**Donald Lynn Mayeux**
**Attorney at Law**
**P.O. Drawer 1460**
**Eunice, LA 70535**
**(337) 457-9610**
**Counsel for Defendant/Appellee:**
**Leger Construction, LLC**

**John Daniel Rayburn, Jr.**
**Daigle, Crawford & Jamison**
**P. O. Box 3667**
**Lafayette, LA 70509-3667**
**(337) 234-7000**
**Counsel for Defendant/Appellee:**
**Post-Tension Slabs, Inc.**

**Paul Joseph McMahon, III**
**Attorney at Law**
**P. O. Box 3643**
**Lafayette, LA 70502-3643**
**(337) 233-6768**
**Counsel for Plaintiff/Appellant:**
**Christine Taylor**
**John Taylor**

**Gretchen Heider Mayard**
**Attorney at Law**
**P. O. Box 81338**
**Lafayette, LA 70598-1338**
**(337) 291-2440**
**Counsel for Defendant/Appellee:**
**Leger Construction, LLC**

**Timothy Alan Maragos**
**Caffery Plaza, Suite 100**
**4023 Ambassador Caff. Pkwy**
**Lafayette, LA 70503**
**(337) 988-7240**
**Counsel for Intervenor/Appellee:**
**State Farm Fire & Casualty Co.**

**Kyle Patrick Polozola**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505**
**(337) 232-7424**
**Counsel for Defendant/Appellee:**
**Randy Rivera**

**Rachel Welch**
**Daigle, Crawford & Jamison**
**P. O. Box 3667**
**Lafayette, LA 70509**
**(337) 234-7000**
**Counsel for Defendant/Appellee:**
**Post-Tension Slabs, Inc.**

**SAUNDERS, Judge.**

This case involves homeowners whose home was built on an inadequate foundation. The homeowners filed suit against various parties including, but not limited to, the engineer that designed the post-tension slab used in the home and a construction company that constructed a large portion of the home.

The engineer filed exceptions of no right of action and no cause of action, while the construction company filed a motion for summary judgment. The trial court granted the engineer's exception of no right of action without issuing reasons for that judgment. The trial court also granted the construction company's motion for summary judgment based on a finding that the homeowners could not meet their burden to prove regarding liability.

We reverse the trial court's judgment relative to the exception of no right of action. Further, we affirm the summary judgment granted to the construction company.

**FACTS AND PROCEDURAL HISTORY:**

Doctor John and Christine Taylor (the Taylors) hired Randy Rivera (Rivera), an architect, to create plans for construction of a new home. In October of 2001, construction began on this home located at #7 Rue Aline, Crowley, Louisiana, in Acadia Parish. Several parties participated in the building of the home. Those parties included Rivera, Leger Construction, LLC (Leger), who provided construction services of the home, Post-Tension Slabs, Inc. (Post-Tension), which furnished services related to the foundation of the home, and Roy Carubba (Carubba), an engineer who contracted with Post-Tension to design the foundation for the home.

The Taylors occupied the home in October of 2002. Thereafter, the Taylors became aware of numerous defects in the home. On August 30, 2006, the Taylors

filed suit against Rivera, Leger, Carubba, and Post-Tension.  After some discovery was conducted and three experts hired to find the cause of the defects, it would eventually be the opinion of those experts that the defects were related to the home's inadequate foundation for the types of soil present at the site of its construction. Thereafter, amongst other legal devices filed by parties not pertinent to this appeal, Carubba filed exceptions of no cause of action and no right of action, and Leger filed a motion for summary judgment.

A hearing was conducted on both of Carubba's exceptions and Leger's motion. The Taylors, despite being properly noticed, were not present.  The trial court, without giving specific reasons for judgment, granted Carubba's exception of no right of action. Further, the trial court granted Leger's motion for summary judgment based on its finding that the Taylors could not carry their burden to prove fault by Leger at trial.  The Taylors timely perfected this appeal alleging the following assignments of error:

**ASSIGNMENTS OF ERROR:**

1.    The trial court erred when it granted the exception of no right of action and dismissed the Taylors' claims against Carubba.

2.    The trial court erred when it did not grant the Taylors the right to amend their petition relative to Carubba.

3.    The trial court erred when it granted the motion for summary judgment and dismissed the Taylors' claims against Leger Construction.

**ASSIGNMENT OF ERROR NUMBER ONE:**

The Taylors contend that the trial court erred when it granted Carubba's exception of no right of action and dismissed their claims against him.  We find that the Taylors' contention has merit.

This court, in *Randall v. Concordia Nursing Home*, 07-101, pp. 4-5 (La.App.

2

3 Cir. 6/22/07), 965 So.2d 559, 564 (citations omitted), stated the following:

Whether a plaintiff has a right of action is a question of law. An appellate court considers whether a trial court's ruling on an [e]xception of [n]o [r]ight of [a]ction is legally correct via a *de novo* review.

The burden of proving that a plaintiff has no right of action is on the movant. The test for the application of the [p]eremptory [e]xception of [n]o [r]ight of [a]ction is whether this plaintiff has the capacity or legal interest to enforce the rights asserted in the petition. This exception is a threshold device that terminates suits brought by one who cannot enforce the right asserted judicially. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.

In the case before us, the Taylors alleged in their petition that they owned immovable property and built a home on that property. In connection with the construction of the home, the Taylors alleged in their petition, with respect to Carubba, the following:

7.

Further in connection with the construction of their residence, Carubba, a licensed engineer issued to design to Post-Tension for the foundation and foundation system and also inspected and approved the work performed by Post-Tension pursuant to the same.

8.

After commencing occupancy of the residence, the Taylors became aware of serious deficiencies of the same, which deficiencies consists of the following:

a) differential movement in the foundation and foundation system of the residence;
b) cracking in the exterior brick veneer of the residence as a result of the movement;
c) cracking in the interior drywall of the residence as a result of the movement; and
d) other defects to be shown at trial.

9.

The aforementioned defects in the construction of the residence arise out of the failure by the defendants to properly perform their work and/or services to the Taylors in connection with the design and/or

3

construction of the residence, which failures include the following:

. . . .

> b) failure by Carubba to properly design the foundation system for the residence and further failure to properly oversee the foundation work performed by Post-Tension[.]

We must determine whether the Taylors, as owners of a newly built home, have the legal interest or capacity to enforce the rights asserted above against Carubba, the engineer/designer of the foundation system used in constructing their home. Louisiana Civil Code article 2315(A) states, in pertinent part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

The Taylors allege in their petition that Carubba's acts, i.e., failure to properly design the foundation system for their home and failure to properly oversee the foundation work done to construct their home, caused damage to them via damage to that home. Therefore, it is clear that the Taylors possess both capacity and legal interest in enforcing the rights asserted in their petition against Carubba under La.Civ.Code art. 2315.

Carubba argues that the Taylors cannot recover under La.Civ.Code art. 2315 because the article is preempted with respect to him by the New Home Warranty Act (NHWA) found at La.R.S. 9:3141, *et. seq.* Carubba also argues that even if the NHWA does not preempt La.Civ.Code art. 2315, the Taylors' action against him is prescribed. These arguments are misguided.

Our fifth circuit, in *Mason v. Kansas City Southern Railway Co.*, 00-208, p. 5 (La.App. 5 Cir. 9/26/00), 769 So.2d 1249, 1252 (footnotes omitted), stated the following:

4

The essential function of the exception of no right of action is to provide a threshold device for terminating a suit brought by one with no legal interest to assert it, that is, to challenge the plaintiff's interest in the subject matter of the suit or his lack of capacity to proceed with the suit. This exception is not available to urge a defense to the effect that the plaintiff is without interest simply because the defendants have a defense to the plaintiff's actions, nor can this exception of no right of action be invoked to determine whether a particular defendant can stand in judgment in a particular case. Any such defenses must go to the merits only.

Both arguments raised by Carubba 's arguments "urge a defense to the effect that the [Taylors are] without interest simply because [he has] a defense to the [their] actions." *Id*. Thus, under an exception of no right of action, neither this court, nor the trial court, can use this exception "to determine whether [Carubba] can stand in judgment" in this case. *Id*. Both of Carubba's arguments are "defenses [that] must go to the merits only." *Id*.

Accordingly, we find that the trial court committed an error of law by granting Carubba's exception of no right of action. The petition of the Taylors establishes that they have "the capacity or legal interest to enforce the rights asserted in the petition." *Randall*, 965 So.2d at 564. Therefore, we reverse the trial court's judgment.

**ASSIGNMENT OF ERROR NUMBER TWO:**

The Taylors assert in their second assignment of error that the trial court erred when it did not grant them the right to amend their petition rather than grant Carubba's exception of no right of action. Our reversal of the trial court's grant of Carubba's exception renders this assignment moot.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In their final assignment of error, the Taylors argue that the trial court erred when it granted Leger's motion for summary judgment. We do not agree.

Summary judgments are subject to a de novo review. *Covington v. McNeese State University*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, 09-69 (La. 3/6/09), 3 So.3d 491. Louisiana Code of Civil Procedure Article 966(A)(2) states that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." Under La.Code Civ.P. art. 966(B), a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Louisiana Code of Civil Procedure Article 966(C)(2) outlines the burden of proof that a party must carry in order to have a motion for summary judgment granted. It states:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2)

In the case before us, the Taylors filed a claim against Leger alleging that Leger, as the general contractor, failed to properly oversee the work performed by its subcontractors, laborers, or any other entity providing services in the construction of their home. The Taylors have the burden to prove this at trial. Therefore, Leger, in order to carry its burden of proof as the movant for the summary judgment, merely

6

has to "point out to the court that there is an absence of factual support for one or more elements essential to the [Taylors'] claim." La.Code Civ.P. art. 966(C)(2).

Leger based its motion for summary judgment on the assertion that the Taylors could not maintain their burden of proof against it at trial. The Taylors respond with two arguments that they claim raise issues of fact material to the case that preclude summary judgment: (1) that Leger was the general contractor of the construction of their home and, as such, is liable unto them as a "Builder" under the NHWA, and (2) that Leger, even if not a "Builder" under the NHWA, was liable unto them under La.Civ. Code art. 2315, under breach of contract, and/or under breach of warranty of workmanlike performance.

The Taylors first argue that there is a genuine issue of material fact regarding whether Leger is liable to them for the inadequate construction of their home as a "Builder" under the NHWA. Louisiana Revised Statutes 9:3150 states that the NHWA:

> provides the exclusive remedies, warranties, and peremptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply. Nothing herein shall be construed as affecting or limiting any warranty of title to land or improvements.

Louisiana Revised Statutes 9:3143(1), in pertinent part, defines a "Builder" as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home." La.R.S. 9:3144, in pertinent part, states:

> A. Subject to the exclusions provided in Subsection B of this Section, every builder warrants the following to the owner:
>
> . . . .
>
> B. Unless the parties otherwise agree in writing, the builder's warranty

7

shall exclude the following items:

. . . .

> (8) Loss or damage which does not constitute a defect in the construction of the home by the builder, or any employee, agent, or subcontractor of the builder.

Under the clear language of the statutory scheme set up in the NHWA, the Taylors must show that Leger was a "Builder" as defined by the act, and that Leger, in its capacity as a "Builder," caused some damage to their home. The parties dispute whether Leger is a "Builder" under the NHWA. However, a finding by this court that the Taylors have not raised a genuine issue of material fact with regard to whether Leger caused some damage to their home would make a determination of Leger's status as a "Builder" moot and, further, would dispense with the Taylors' second argument that Leger was liable unto them under La.Civ. Code art. 2315, under breach of contract, and under breach of warranty of workmanlike performance. Therefore, we will address this issue first.

After a thorough review of the record, we find that there is no evidence that the Taylors' damages were due to a defect created by Leger or any of its employees, agents or subcontractors. The testimony of three experts exists in the record, Carubba, the civil engineer that designed the slab used in the home, Russell Bellard, a civil engineer hired by the Taylors, and Billy R. Prochaska, a geotechnical consultant. The testimony of each expert is in accord with respect to the following: the damage to the Taylors' home was caused by uneven heaving in the soil beneath the foundation; heaving in soil occurs when soil rises in elevation usually due to an increase in the moisture content of that soil; different types of soil react differently

8

to an increase in moisture content, i.e., some types of soil are elevated more than others; these differences in elevations caused too much stress to be put on the type of post-tension slab used as the foundation of the Taylors' home; this stress caused the foundation to fail beneath the Taylors' home, thus damaging the home; and those soil heaving issues could have been avoided had a soil boring test been performed prior to the building of the home's foundation.

The Taylors sole source of evidence that they cite for Leger's fault is the testimony of Dr. Taylor. First, the Taylors assert that Leger was the reason that they chose a post-tension slab. The following is an excerpt of Dr. Taylor's testimony regarding the choice to use a post-tension slab:

Q All right. Now, Let's - - can you tell me, Dr. Taylor, how it came about that a post-tension slab was used for the construction of your home?

A As I recall, the plans called for pilings of piers, shafts or something like that, and in my discussions with [Leger] prior to completion of the plans, we talked about post-tension. And I do recall my concern about the foundation - - the soil difficulties in the Crowley area. And there was a point at which I asked [] [Rivera] and Brent [Leger] to put their heads together to determine the best choice between those two, between pilings and post-tension.

Q Do you - -

A Because I was concerned about the soils.

Q All right. And you - - and your testimony is, at that time, prior to the foundation being poured, you expressed those concerns that you just told us about to both Randy Rivera and Brent Leger.

A Correct.

Q The footings or pilings that you referred to, were those in the

9

original plans and drawings prepared by Mr. Rivera for your home?

A    I'm pretty sure, yes.

Q    After you discussed your concerns about the soil in Crowley area with [] Rivera and Mr. Leger, what, if anything, did either of those two or anyone suggest to you concerning the foundation of your home?

A    I don't recall specific recommendations. I do know that we ultimately did a post-tension slab.

Q    And that was a decision that you had the final authority on; is that correct? You approved that?

A    It was my house, yes.

Q    And can you tell me, as between [] Rivera and Mr. Leger, whether it was a recommendation from one or the other, or from both?

A    I think they were in accord.

The Taylors cite this testimony for their assertion that a genuine issue of material fact exists as to whether Leger recommended the installation of an inadequate foundation.  We do not agree.

Dr. Taylor's recollection as to Leger's recommendations is tenuous at best. Throughout Dr. Taylor's deposition he states that his memory is very poor, that his wife would have a better recollection of the events surrounding the building of their home, and that he did make some notes of different conversations that took place between he and other parties due to his poor memory.  The Taylors did not produce any of these notes, nor did Mrs. Taylor testify.

Further, even if this court were to find that Dr. Taylor's testimony creates an

10

issue of fact regarding whether Leger influenced Dr. Taylor to choose a post-tension slab, according to all three experts whose testimony is in the record, the choice to use a post-tension slab versus a traditional slab was not the cause for the problems in the home's foundation. The problem with the foundation was either the inadequate depth of the post-tension slab or the lack of other support structures such as pilings or footings that add support to the slab regardless of whether the slab was a post-tension slab. According to those experts, a post-tension slab is simply a technique used to make concrete stiffer than the normal reinforcement of concrete which was steel rebar or welded-wire fabric. Thus, even if Leger influenced Dr. Taylor to use a post-tension slab, it is ultimately up to the designer of that slab to make sure that the slab is adequate given the information available to that designer via the plans of the home and the soil beneath that home. The home's foundation was designed by Carubba who contracted with Post-Tension to create that design. Post-Tension was hired and paid directly by the Taylors. Therefore, neither Carubba nor Post-Tension are the agent, subcontractor or employee of Leger, and there is no evidence that Carubba based his design on anything done or recommended by Leger.

Next, the Taylors assert that it was Brent Leger, the owner of Leger, who advised Dr. Taylor regarding the type of soil testing that needed to be done prior to the installation of the foundation. The Taylors cite the following from Dr. Taylor's testimony to support their assertion:

Q    After the selection of the post-tension slab, do you recall any discussions concerning whether or not you needed to have any soil tests performed for consideration of using a post-tension slab?

A    No.

11

Q     Don't remember, or there were none?

A     No, I don't remember.

Q     Okay. Did you have an opportunity to see, at any time prior to the preparation of your foundation . . .we'll mark this "Exhibit #7,," which is a drawing:  Post-Tension Slabs, Inc., John Taylor, 449 Fairway Drive, Crowley, Louisiana, foundation plan, drawn by H. Alvarez. Check by R.M.C., date 10-01, and it had a CEI Project Number, 10.15.01-405, and it is referenced as sheet S-1.

      I'll ask you, did you ever see that drawing, to your recollection?

A     I don't recall having seen this drawing specifically, no.

Q     Do you know whether or not either [] Rivera or Mr. Leger were provided that drawing?

A     I don't know.

Q     Would you read for me - - there's a certain number of paragraphs under the notes and specifications section. Would you read for us what is contained in Number 18?

A     (Reading) "Owner, builder, general contractor and/or homeowner should verify soil conditions prior to construction to verify design. Foundation designed for minimum bearing capacity of 1200psi, sf3 and TI less than 20."

Q     Do you know if any tests were done prior to the building of your foundation which would verify those assumptions or conditions?

A     I'm not even familiar with these terminologies.

Q     All right. So you have no idea whether or not that was done or not?

A     The only testing that I know we did was a soil compaction test.

Q     And why did you have that test done?

A     I did that at Mr. Leger's recommendation.

Q     All right. Can you recall whether or not he made any other recommendations for any type of soil testing?

A     I don't recall.

This testimony establishes that Leger may have suggested a soil compaction test be performed, which, again, all the expert testimony in the case stated was necessary. However, this testimony does not suggest that Leger failed to suggest the soil boring test. Dr. Taylor's testimony specifically states that he does not remember if Leger recommended the soil boring test. Accordingly, we find no merit to the Taylors' contention that it was Leger, through its owner Brent Leger, who advised Dr. Taylor regarding the decision to forgo the soil boring test prior to the installation of the foundation. Moreover, according to the testimony of Bellard, it is the engineer that designs the slab that makes the recommendation of whether to have a soil boring test performed.

Finally, the only evidence in the record regarding Leger's involvement with the foundation concerns a contract between Leger and the Taylors for the labor in creating the wooden forms in which the concrete is poured to make slab designed by Carubba. Bellard, the civil engineer hired by the Taylors, was the only source of testimony regarding the adequacy of those forms. An excerpt of his testimony follows:

Q     When you observed or went out to observe the Taylors' house, did you notice anything, or could you even tell - - see the slab itself, and see what - - if there were any deficiencies in the slab or, I guess not the slab, but in the construction of the forms that went around the slab?

13

A      No. Sometimes I do see some irregularities, but I don't recall any in the Taylor, you know. Irregularities meaning a form slipped in the - - concrete.

Q      Right.

A      Protruded a little bit. I mean, there's numerous workmanship irregularities.

Q      And you didn't see any of that?

A      I don't recall seeing that.

Therefore, the only evidence in the record is that Leger did perform in a workmanlike manner with regard to constructing the wooden forms for the foundation. No other evidence is found in the record that the Taylors have raised a genuine issue of material fact with regard to whether Leger caused some damage to their home under the NHWA, La.Civ.Code art. 2315, breach of contract, or breach of warranty of workmanlike performance. Accordingly, we affirm the summary judgment granted by the trial court in favor of Leger.

**CONCLUSION:**

The Taylors raised three assignments of error, that the trial court was improper in granting Leger's motion for summary judgment, in granting Carubba's exception of no right of action, and in failing to allow the Taylors to amend their petition. We affirm the summary judgment granted to Leger, but reverse the exception of no right of action granted to Carubba. The Taylors' assignment of error related to amending their petition is rendered moot by our reversal of Carubba's exception. All costs of this appeal are assessed equally between the Taylors and Carubba.

**AFFIRMED IN PART, REVERSED IN PART.**

14